David S. Kurtzer-Ellenbogen (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
dkurtzer@wc.com
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000 / FAX (202) 434-5029

Charles H. Samel (SBN 182019)
Lauren V. Neuhaus (SBN 327698)
STOEL RIVES LLP
charles.samel@stoel.com
lauren.neuhaus@stoel.com
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
(415) 617-8900 / FAX (415) 617-8907

*Attorneys for Defendant Intel Corporation*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| DARQUES SMITH, et al., | Civil Action No. 4:23-cv-05761-HSG |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| INTEL CORPORATION, | **[Fed. R. Civ. P. 9(b), 12(b)(6)]** |
| Defendant. | Complaint Filed: November 8, 2023 |
| | Date:   Thursday, May 2, 2024 |
| | Time:   2:00 pm |
| | Place:  Oakland Courthouse |
| |            Courtroom 2, Fourth Floor |
| | Judge:  Hon. Haywood S. Gilliam, Jr. |

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ............................... 1

3   MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

4   INTRODUCTION ....................................................................................... 1

5   BACKGROUND ........................................................................................ 3

6       A.    Speculative Execution and the Discovery of a New Class of Vulnerabilities. ........... 3

7       B.    Prior Litigation Related to Speculative Execution-Related Vulnerabilities. ............... 5

        C.    Downfall and the Current Suit. ................................................................. 8

8   ARGUMENT ............................................................................................ 9

9   I.     ALL OF THE FRAUD-BASED CLAIMS FAIL (Counts 1-4, 10-11, 14, 17-18). .............. 9

10      A.    The Complaint Does Not Allege Any Affirmative Misrepresentation. ..................... 9

11      B.    The Complaint Does Not Allege Any Actionable Omission. ................................. 10

12           1.    Plaintiffs Do Not Identify Any Defect Under Rule 9(b). ............................ 10

13           2.    The Complaint Shows Public Knowledge of the "Defect." ........................... 11

14           3.    The Nationwide Omission-Based Claims also Fail Because Plaintiffs

15                Do Not Allege Any Duty to Disclose. ........................................... 12

16           4.    Plaintiffs Do Not Plausibly Allege Reliance on Any Omission. ................... 17

17  II.    THE CLAIMS OF UNLAWFUL OR UNFAIR CONDUCT FAIL (Counts 2-3)............... 17

18  III.   THE IMPLIED WARRANTY CLAIMS FAIL (Counts 7, 8, 13, 16). ........................... 20

19  IV.   THE NEGLIGENCE CLAIM FAILS (Count 6).................................................... 22

20      A.    There Was No Breach of the Standard of Care.............................................. 22

21      B.    The Economic Loss Rule Bars the Negligence Claim........................................ 22

22  V.    THE QUASI-CONTRACT AND UNJUST ENRICHMENT CLAIMS FAIL
          (Counts 5, 9, 12, 15, 19). ........................................................................ 23

23  VI.   CERTAIN CLAIMS FAIL FOR ADDITIONAL REASONS
          (Counts 7, 10, 11, 16-18)......................................................................... 24

24      A.    Counts 7 and 16 Fail for Lack of Privity. ................................................... 24

25      B.    Count 8 Fails Because Plaintiffs Fail to Plead a California Transaction. .................. 24

26      C.    Count 10 Fails for Additional Reasons........................................................ 25

27      D.    Counts 11, 17, and 18 Fail Because They Do Not Plausibly Plead Intent................. 25

28  CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*,
  2009 WL 3147315 (N.D. Ill. Sept. 28, 2009) ..........................................................................24

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)...............................................23

*Ave. Lofts Condos. Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010 (D. Or. 2014)..............25

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)..................................................................20

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ............................................24

*Collins v. Ascension Via Christi Hosps., Inc.*,
  2023 WL 3318315 (D. Kan. May 9, 2023) .............................................................................25

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ...................................................18

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) .............................................18

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) .........................................18

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) .....................................................18

*Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012).......................11

*Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500 (9th Cir. 1995) .................................3

*Granados v. OnPoint Cmty. Credit Union*, 2023 WL 3570039 (D. Or. May 18, 2023) ................9

*Gunn v. FCA US, LLC*, 2023 WL 5418736 (N.D. Cal. Aug. 22, 2023)  .......................................18

*Hauck v. Advanced Micro Devices, Inc.* ("*AMD I*"),
  2018 WL 5729234 (N.D. Cal. Oct. 29, 2018)................................................................. *passim*

*Hauck v. Advanced Micro Devices, Inc.* ("*AMD II*"),
  2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ............................................................. 10, 14-15

*Hauck v. Advanced Micro Devices, Inc.* ("*AMD III*"),
  816 F. App'x 39 (9th Cir. 2020)  ............................................................................... *passim*

*Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...........................................15, 16

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018)............................................................ *passim*

*Immigr. Sols., Inc. v. Stiffler*, 2022 WL 462083 (D. Or. Feb. 15, 2022) ......................................25

*In re Actimmune Mktg. Litig.*, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010)...............................19

*In re Apple Processor Litig.* ("*Apple I*"), 366 F. Supp. 3d 1103 (N.D. Cal. 2019) .......................5

*In re Apple Processor Litig.* ("*Apple II*"),
2022 WL 2064975 (N.D. Cal. June 8, 2022) ........................................6, 14, 20, 23

*In re Apple Processor Litig.* ("*Apple III*"),
2023 WL 5950622 (9th Cir. Sept. 13, 2023) ...................................................6, 17

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel I*"),
2020 WL 1495304 (D. Or. Mar. 27, 2020).............................................5, 8, 21, 22

*In re Intel Corp. CPU Mktg, Sales Pracs. & Prods. Liab. Litig.* ("*Intel II*"),
2021 WL 1198299 (D. Or. Mar. 29, 2021)............................................7, 12, 13, 14

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel III*"),
582 F. Supp. 3d 771 (D. Or. 2022) .................................................................4, 7, 11

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel IV*"),
614 F. Supp. 3d 783 (D. Or. 2022) ..................................................................*passim*

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel V*"),
2023 WL 7211394 (9th Cir. Nov. 2, 2023).......................................................*passim*

*In re Sony Vaio Comput. Notebook Trackpad Litig.*,
2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ...........................................................23

*Ji v. Naver Corp.*, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023)....................................10

*Kampmann v. Procter & Gamble Co.*, 2023 WL 7042531 (C.D. Ill. Oct. 24, 2023)....................9

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................9, 10

*Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512 (9th Cir. 2021)....................................13

*Kulp v. Munchkin, Inc.*, 2023 WL 4843340 (N.D. Cal. June 21, 2023) ..............................10

*Lamb v. Daimler Truck N. Am. LLC*, 2023 WL 2967918 (D. Kan. Apr. 17, 2023) ......................9

*Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019).......24, 25

*Noll v. eBay Inc.*, 2013 WL 2384250 (N.D. Cal. May 30, 2013) ..................................16, 17

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008)............................16

*Price v. Apple, Inc.*, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .............................10, 18

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................11

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ........................................9

*Song v. Champion Petfoods, USA, Inc.*, 2020 WL 7624861 (D. Minn. Dec. 22, 2020).................9

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014) .....16, 20

*Taleshpour v. Apple, Inc.*, 2022 WL 1577802 (9th Cir. May 19, 2022)........................................13

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)............................21

*Vallarta v. United Airlines Inc.*, 497 F. Supp. 3d 790 (N.D. Cal. 2020) ....................................23

*Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003) ...........................................24

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)........................................12, 13, 20

## STATE CASES

*Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634 (Ct. App. 2006) ....................................19

*Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Ct. App. 2006)...............12, 13, 19, 20

*Goodman v. Kennedy*, 556 P.2d 737 (Cal. 1976).........................................................................15

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839 (Kan. 1996).....................23

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989) .................23

*Lambert v. Gen. Motors*, 79 Cal. Rptr. 2d 657 (Ct. App. 1998)....................................................22

*Larisa's Home Care, LLC v. Nichols-Shields*, 404 P.3d 912 (Or. 2017)......................................23

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Ct. App. 1997) ...................................................13, 15

*Nalick v. Seagate Tech. LLC*, 2021 WL 1135226 (Cal. Ct. App. Mar. 25, 2021) ........................14

*S. Cal. Gas Leak Cases*, 441 P.3d 881 (Cal. 2019) .......................................................................22

*Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965) ....................................................................19

*ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302 (Minn. 1996) .................23

## STATUTES

Cal. Bus. & Prof. Code § 17200, *et seq.*, California Unfair Competition Law .................... *passim*

Cal. Bus. & Prof. Code § 17500, *et seq.*, California False Advertising Law .....................9, 10, 17

Cal. Civ. Code § 1790, *et seq.*, California Song-Beverly Consumer Warranty Act............9, 24, 25

Cal. Civ. Code § 1750, *et seq.*, California Consumer Legal Remedies Act ............................9, 17

Cal. Com. Code § 2314.............................................................................................................9, 24

810 Ill. Comp. Stat. Ann. 5/2-314...............................................................................................21

815 Ill. Stat. Ann. § 505/1, *et seq.*,
    Illinois Consumer Fraud and Deceptive Business Practices Act ...............................................9

Kan. Stat. Ann. § 50-623, *et seq.*, Kansas Consumer Protection Act...............................................9

Kan. Stat. Ann. § 84-2-314 .........................................................................................21

Minn. Stat. Ann. § 325F.69(1)......................................................................................25

Or. Rev. Stat. Ann. § 646.605, *et. seq.*, Oregon Unlawful Trade Practices Act.............................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 6

Ninth Circuit Rule 36-3 ...........................................................................................10

5 B.E. Witkin, *Summary 11th Torts* § 916 (West 2023)............................................................15

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on May 2, 2024, at 2:00 pm, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, in Courtroom 2 on the Fourth Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr. Defendant Intel Corporation ("Intel") will present a motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Intel requests that the Court dismiss the Complaint with prejudice for the reasons set forth below.  Intel's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Supporting Declaration of David Kurtzer-Ellenbogen, and the Request for Judicial Notice and materials attached thereto contemporaneously filed with this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

Whether all claims should be dismissed under Rules 9(b) and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case involves the newest variation in a class of computer security vulnerabilities that gave rise to three prior cases against Intel, Advanced Micro Devices Inc. ("AMD"), and Apple.  All three of those prior cases were dismissed with prejudice on the pleadings, and three different Ninth Circuit panels affirmed those dismissals between 2020 and 2022.  Despite this history, Plaintiffs now bring a materially identical case following the disclosure in August 2023 of the latest variant in what Plaintiffs themselves repeatedly characterize as "*the same class of attacks*" that were at issue in those prior cases, Compl. ¶¶ 9, 15.[1]  No one has ever alleged any actual hack using these extremely complex theoretical techniques.  Plaintiffs nevertheless contend, as did all three prior sets of plaintiffs, that a central processing unit ("CPU") manufacturer commits fraud by failing to disclose CPU design "defects" that were supposedly revealed by the much later discovery of novel security vulnerabilities.  As three prior district courts have done, and three prior Ninth Circuit panels have affirmed, the Court should dismiss the materially identical claims asserted here.

---

[1] All emphasis is added unless otherwise indicated.

The first variants in this vulnerability class, disclosed in 2018, were called "Spectre" and "Meltdown." The variant at issue here is called "Downfall." Downfall was discovered in 2022 and disclosed to Intel at that time. *Id.* ¶ 155. After Intel had developed a patch to prevent attacks, Downfall was disclosed to the public. *Id.* All these variants are related techniques that potentially permit a "side channel attack" to infer information left in memory sources (such as caches or buffers) after the processor has engaged in "speculative execution"—a performance-enhancing feature of all modern CPUs. Essentially, speculative execution involves the processor making educated guesses based on past experience about the results of upcoming instructions, so that the whole program runs faster. Before 2017, no one had identified any potential hacking technique to take advantage of speculative execution. Since then, researchers have discovered "many variants" of this technique, *id.* ¶¶ 109, 125, 141, and CPU manufacturers have responded in turn by deploying patches for each new variant as it is discovered.

None of the prior suits against Intel, AMD, or Apple stated a plausible claim, because the discovery by researchers of novel potential ways to hack decades-old performance-enhancing design features does not mean that computing products are or were defective. *See, e.g.*, *Hauck v. Advanced Micro Devices, Inc.* ("*AMD III*"), 816 F. App'x 39, 43 (9th Cir. 2020) (consumers understand that that their computing devices will not be "completely impervious to novel cybersecurity threats," and "the harm represented by [a] theoretical risk of a cybersecurity flaw that has not yet been successfully exploited" does not "outweigh[] the other benefits of [the manufacturer]'s processor design"). Any other conclusion would mean that the inevitable discovery of thousands of new security vulnerabilities every year renders countless existing products retrospectively "defective." That is not the law.

The Court should dismiss this Complaint for the same reasons that the complaints in the previous actions were dismissed. All fraud-based claims fail under Rule 9(b) because Plaintiffs do not plead any actionable "defect" or any allegedly false or misleading statement. The fraudulent omission claims also fail for multiple other reasons. Most fundamentally, there was no omission because the relevant class of vulnerabilities was widely known *before* Plaintiffs purchased their devices, as was the publicly-trumpeted expectation of further and ongoing vulnerability variants. The omission claims also fail because Plaintiffs have pled no basis for a duty to disclose under California

law, nor have they pled materiality or reliance.  Like the prior plaintiffs, Plaintiffs also fail to allege that Intel acted unfairly (because failing to disclose what one has no duty to disclose is not unfair), or that Intel breached the implied warranty of merchantability (because Intel CPUs have always performed their function as the "brains" of computing devices).  The negligence claim is barred by the economic loss rule, and in any event fails for the same reasons as the "defect" claims: it is not negligent to design a product without anticipating potential vulnerabilities that researchers may discover decades later.  Plaintiffs' alternative claims under the laws of states other than California fail for the same reasons and others described below.[2]  The Complaint should be dismissed.

## BACKGROUND

### A.    Speculative Execution and the Discovery of a New Class of Vulnerabilities.

A CPU is the "brain" of a computer; it "executes instructions and interacts with a system's memory."  Compl. ¶ 59.  Since the 1990s, *all* modern CPUs—Intel's and others—have used certain techniques, including speculative execution, to increase performance.  *Id.* ¶¶ 77-79, 86.  Speculative execution means that when a CPU is "faced with a conditional instruction—*i.e.*, an instruction based on a value that must be retrieved," it "guesses what the value will be instead of waiting for its retrieval from memory, and executes code based on that guess.  If, when the memory contents are fetched, the guess is incorrect, the CPU discards the 'speculative' code."  *Id.* ¶ 80.

Security vulnerabilities in technology products are a fact of everyday life.  As the Complaint reflects, these vulnerabilities are given "CVE" numbers, in reference to an industry-endorsed list of "Common Vulnerabilities and Exposures."  *Id.* ¶ 155.  This list now has more than 220,000 entries. *See* Ex. 1 (CVE homepage, www.CVE.org (last accessed Jan. 24, 2024)).[3]  As also reflected in the Complaint, the industry-standard practice when a new vulnerability is discovered is to report the issue

---

[2] Plaintiffs "aver that California law applies to their claims," which they purport to assert on behalf of a nationwide class, but they assert subclass claims under the laws of other states "in the alternative." Compl. ¶¶ 273, 275, 277, 279, 312.  Intel reserves all choice-of-law arguments.  *See Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) (choice-of-law issues may be deferred to a later stage of the litigation).

[3] All exhibits are to the Declaration of David S. Kurtzer-Ellenbogen filed contemporaneously with this motion.  The National Institute of Standards and Technology, a federal agency, also maintains a "National Vulnerability Database," at https://nvd.nist.gov/vuln/search (last accessed Jan. 24, 2024). Ex. 2 (NIST, National Vulnerability Database); *see also* Req. Judicial Notice *passim*.

to the affected companies, but not to disclose it publicly until steps are in place to prevent hackers from taking advantage of it.  *See, e.g.*, Compl. ¶ 155 (researcher discovered and reported vulnerability in 2022, but made it public in 2023, "so that Intel had time to release microcode updates that can fix [it]"); *see also In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel IV*"), 614 F. Supp. 2d 783, 790-94 (D. Or. 2022) (discussing such coordinated disclosure embargoes).  As the Department of Homeland Security's National Cybersecurity and Communications Integration Center notes, "[r]isks are publicized only after practical and effective mitigations are available to users and administrators."  Ex. 3 (Dep't of Homeland Security, NCCIC Services for Federal Agencies, https://www.cisa.gov/sites/default/files/documents/NCCIC%20Service%20Menu%20-%20 Federal.pdf (last accessed Jan. 24, 2024)).[4]

In January 2018, two new vulnerabilities, named "Spectre" and "Meltdown" by third-party security researchers, were publicly disclosed in a media report before patches were made widely available.  *See* Compl. ¶¶ 8, 97-98.  Although Plaintiffs refer to these "side-channel" vulnerabilities as "catastrophic," *id.* ¶¶ 8, 97-98,[5] the vulnerabilities were promptly patched, *and neither Plaintiffs here nor any other plaintiff has ever alleged any actual data breach using these extremely complex techniques*.  Plaintiffs acknowledge that Spectre and Meltdown were not "discrete vulnerabilities" but "part of a large class of vulnerabilities"—many more of which have since been discovered and patched—all allegedly arising from design decisions dating back to the 1990s.  *Id.* ¶ 109.

According to Plaintiffs, *all* variants result from the same "fundamental[]" design defect: namely, while "the results of speculative or out-of-order instructions are discarded if a branch is incorrectly predicted, Intel fails to ensure that side effects of these instructions do not linger in various

---

[4]  *See also* Ex. 7 (Cybersecurity & Infrastructure Security Agency, Coordinated Vulnerability Disclosure Process ("CISA-CVD"), https://www.cisa.gov/coordinated-vulnerability-disclosure-process (last accessed Jan. 24, 2024)) (discussing steps preceding disclosure of a cybersecurity vulnerability).

[5]  Plaintiffs use the term "side channel" repeatedly, Compl. ¶¶ 98, 107, 137, 140, but do not define it. A "side channel" attack is one that is based on physical observation of a system.  *See* NIST, Computer Security Resource Center, https://csrc.nist.gov/glossary/term/side_channel_attack (last accessed Jan. 24, 2024).  The vulnerabilities referenced in the Complaint (both those disclosed in 2018 and the new variant disclosed in August 2023) involve "timing side channels," meaning that the attacker, by measuring minute timing differences, may be able to infer information (as relevant here, that an attacker has accessed during speculative execution).  *See* Compl. ¶¶ 106-07; *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel III*"), 582 F. Supp. 2d 771, 780 (D. Or. 2022).

parts of the CPU." *Id.* ¶¶ 89-96.  Plaintiffs switch between references to "defects" (plural) and "the defect" (singular), *see, e.g.*, Compl. ¶¶ 22, 24, but the fundamental insight animating all variants in this class of security vulnerabilities is the same: While engaging in "speculation," modern CPUs move information into short-term memory locations such as caches and buffers while determining whether the speculation was correct, and the new class of vulnerabilities revealed that, through a series of complex steps, it is possible to render some of this information accessible to an attacker.  *See id.* ¶ 7.

**B.      Prior Litigation Related to Speculative Execution-Related Vulnerabilities.**

Class-action suits were filed against Intel, AMD, and Apple within days of the news about Spectre and Meltdown in early 2018.  All these suits alleged that the companies' CPUs were defectively designed and asserted similar claims of fraudulent and unfair conduct and breach of implied warranty.  *See, e.g.*, *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel I*"), 2020 WL 1495304, at *1 (D. Or. Mar. 27, 2020); *Hauck v. Advanced Micro Devices, Inc.* ("*AMD I*"), 2018 WL 5729234, at *4 (N.D. Cal. Oct. 29, 2018); *In re Apple Processor Litig.* ("*Apple I*"), 366 F. Supp. 3d 1103, 1106 (N.D. Cal. 2019), *vacated in part*, 832 F. App'x 507 (9th Cir. 2020).  Just like the Complaint here, those complaints alleged that long-ago design decisions were defective because they "allow[] protected data to remain in Intel's CPU's unsecure subsystems (e.g., those instructions are not completely undone)."  Ex. 4 (Second Am. Compl., *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 18-md-2828 (D. Or. May 26, 2021), ECF No. 209 ("*Intel MDL* SAC")) ¶¶ 6-7;[6] *see also* Ex. 5 (Consol. Am. Compl., *Hauck v. Advanced Micro Devices*, No. 18-cv-00447 (N.D. Cal. June 13, 2018), ECF No. 53 ("*AMD* AC")) ¶ 60 ("[T]he direct side-effects of the speculatively executed instructions are ultimately undone (*i.e.*, 'flushed'), but the remnants of sensitive kernel data . . . remain in the caches, each of which is vulnerable to side-channel attacks employed by hackers."); *compare* Compl. ¶¶ 78-96.

The complaints also alleged that the mitigations for Spectre and Meltdown failed to address this underlying defect, leading to many new variants that already had been discovered, and asserted that "additional exploits" to take advantage of "the same core Defects . . . will keep happening."  Ex. 4

---

[6] The plaintiffs in *Intel MDL* called this problem "Incomplete Undo."  Ex. 4 (*Intel MDL* SAC) ¶ 6; *see also* Req. Judicial Notice *passim* (seeking judicial notice of publicly-filed complaints).

(*Intel MDL* SAC) ¶¶ 8, 23, 709 (noting "almost two-dozen *new* exploit variations" between 2018 and mid-2021 (emphasis in original)); *see also* Ex. 6 (Second Am. Consol. Compl., *AMD*, No. 18-cv-00447 (N.D. Cal. Dec. 6, 2018), ECF No. 95 ("*AMD* SAC")) ¶ 164 (vulnerabilities were "just the tip of the iceberg").

All three cases were dismissed on Rule 12 motions, and all three dismissals were affirmed.[7] <u>*First*</u>, in *AMD*, the Ninth Circuit affirmed the district court's conclusion that there was no viable claim of either deceptive or unfair conduct. *AMD III*, 816 F. App'x at 42-43. The fraud-based claims failed under Rule 9(b). *Id.* at 42. The implied-warranty claim also failed, because the devices did not "lack even the most basic degree of fitness for ordinary use." *Id.* at 44 (internal quotation marks omitted). Although the plaintiffs alleged that patches for the vulnerabilities significantly impaired performance, AMD processors "are certainly still operable" once patched. *AMD I*, 2018 WL 5729234, at *9.

<u>*Second*</u>, in *Apple,* the district court dismissed all clams for similar reasons, including rejecting the omission claim because the plaintiffs failed to show the existence of a "central functional defect," as required to establish a duty to disclose under *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018). *In re Apple Processor Litig.* ("*Apple II*"), 2022 WL 2064975, at *8-9 (N.D. Cal. June 8, 2022). The *Apple* plaintiffs, too, alleged a substantial performance reduction resulting from the patches. The court ruled that "Apple only has a duty to disclose *physical* defects," citing *Hodsdon*, and the patches for Spectre and Meltdown did not "constitute physical defects giving rise to a duty to disclose" and "may not even be properly considered a 'defect' in the first instance." *Id.* at *9 (emphasis in original) (citation omitted). The court further held, and the Ninth Circuit agreed, that the omission claim failed for lack of reliance. While the plaintiffs "alleged that they would have behaved differently had Apple disclosed the defects," they did not "sufficiently allege[] that they would have been aware of any disclosure." *In re Apple Processor Litig.* ("*Apple III*"), 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023); *see also Apple II*, 2022 WL 2064975, at *10-11. And the plaintiffs' unfairness and unjust enrichment claims merely repeated their failed fraud allegations, so they, too, failed as a matter of law. *Apple II*, 2022 WL 2064975, at *12-13.

---

[7] *AMD III*, 816 F. App'x 39; *In re Apple Processor Litig.* ("*Apple III*"), 2023 WL 5950622 (9th Cir. Sept. 13, 2023); *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel V*"), 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023).

*Third*, in *Intel MDL*, the district court gave the plaintiffs—who, as here, sought to bring nationwide claims under California law as well as subclass claims in the alternative for 48 other states—three tries to state a viable claim before dismissing with prejudice.  The court rejected the fraudulent-omission claim because of the many public articles, white papers, and patents dating to 2006 that discussed the allegedly "defective" design features at issue, which showed that "the defects were disclosed and not concealed."  *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel III*"), 582 F. Supp. 3d 771, 784 (D. Or. 2022).  The court also noted that if those sources did *not* show public disclosure of the defects, "then they also do not show Intel's knowledge" of the defects, which would also be fatal to the omission claim.  *Id.* at 785.  As an independent ground for dismissal of the omission claim, the court held that the plaintiffs had not pled the existence of a central functional defect under *Hodsdon*.  *In re Intel Corp. CPU Mktg, Sales Pracs. & Prods. Liab. Litig.* ("*Intel II*"), 2021 WL 1198299, at *7-8 (D. Or. Mar. 29, 2021).  The Ninth Circuit expressly affirmed that conclusion, because Intel CPUs never stopped performing their central function as "the 'brains' of the computing device[s]."  *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.* ("*Intel V*"), 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023) (alteration in original).

As to the *Intel MDL* plaintiffs' claim of unfair conduct, the Ninth Circuit agreed with the district court that an unfairness claim cannot merely repackage failed fraud allegations, and the claim that Intel acted unfairly because it "sold its processors while knowing them to be defective is simply another way of advancing Plaintiffs' fraud-by-omission argument."  *Id.* at *2.  Although the district court initially had held that certain plaintiffs could proceed on the limited theory that Intel acted unfairly during the second half of 2017 by allegedly prolonging the industry-standard and government-sanctioned embargo of information about the vulnerabilities, it subsequently granted Intel's motion for reconsideration and dismissed claims based on that theory as well.  *Intel IV*, 614 F. Supp. 3d at 787-88.  The plaintiffs were "simply alleging that Intel sold product during a normal and reasonable embargo with 'asymmetrical information,'" which merely "describes the situation during every embargoed security vulnerability" and "is insufficient to state a claim for unfair conduct."  *Id.* at 794.

The district court in *Intel MDL* also rejected the claim for breach of the implied warranty of merchantability.  It followed the *AMD* court's reasoning (later affirmed by the Ninth Circuit) that the

plaintiffs had not shown that "the basic functionality of the processors has been compromised by the Defect," and "[s]imply labeling 'secure computing' as a 'basic' function of microprocessors does not show that the CPUs are not performing their ordinary purpose." *Intel I*, 2020 WL 1495304, at *13 (citation omitted).  The court also dismissed the unjust enrichment claims, because it found no basis for them other than the failed omission allegations.  *Intel IV*, 614 F. Supp. 3d at 795.  On November 2, 2023—six days before this new suit was filed—the Ninth Circuit affirmed the dismissal of all claims with prejudice.  *Intel V*, 2023 WL 7211394 *passim*.

### C.    Downfall and the Current Suit.

In August 2022, a security researcher at Google named Daniel Moghimi discovered yet another variant in the class of speculative execution-related vulnerabilities, which he named "Downfall." "[J]ust as with Spectre and Meltdown, Downfall arises from side effects left over after transient execution" of code; it is in "the same class of vulnerability." Compl. ¶¶ 155, 160, 166.  The Downfall attack involves a set of instructions on Intel CPUs called Advanced Vector Extensions ("AVX").  *Id.* ¶ 9.  These are performance-enhancing features introduced "close to a decade" ago; a "vector instruction is a CPU instruction that can perform the same type of operations on multiple data samples in a particularly efficient manner."  *Id.* ¶¶ 12, 130-33, 177.  Moghimi discovered that an AVX instruction called Gather, which is "meant to speed up accessing scattered data in memory," theoretically could permit hackers to gain access to user data left over in certain CPU components from prior operations.  *Id.* ¶¶ 157, 159-60.  Moghimi informed Intel of his discovery and, under standard industry and government-sanctioned practice, that information was embargoed until August 2023 "so that Intel had time to release microcode updates that can fix the vulnerability," at which time Moghimi publicly disclosed the new variant.  *Id.* ¶ 155; Ex. 7 (CISA-CVD).

Plaintiffs are five individuals who reside in California, Kansas, Minnesota, and Illinois.  Three of them allege that they own computers containing Intel CPUs that were manufactured by third parties (such as Dell) and purchased from retailers (such as Best Buy).  *See* Compl. ¶¶ 21, 33, 37.  The other two allege they purchased stand-alone Intel CPUs to incorporate into custom-built computers.  *Id.* ¶¶ 25, 29.  The earliest alleged purchase by a Plaintiff was in January 2020 and the latest was in June 2022.  *Id.* ¶¶ 33, 37.  All Plaintiffs allege that they "would not have purchased [their device] at the

price [they] paid had [they] known about the defect described in this Complaint." *Id.* ¶¶ 24, 28, 32, 36, 41. None identifies *any* specific statement by Intel relied upon in making any purchase. All of them allege varying types of "performance issues" since installing the patches for Downfall, but none alleges suffering any hack as a result of Downfall, or that they have stopped using their devices.

The Complaint asserts 19 counts, including California-law claims under the Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200, *et seq.*), Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750, *et seq.*), and False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500, *et seq.*), and for fraud by omission, quasi-contract/restitution, negligence, and breach of implied warranty (under Cal. Com. Code § 2314 and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*); and corresponding claims under Oregon, Kansas, Minnesota, and Illinois law.

## ARGUMENT

## I.   ALL OF THE FRAUD-BASED CLAIMS FAIL (Counts 1-4, 10-11, 14, 17-18).

### A.   The Complaint Does Not Allege Any Affirmative Misrepresentation.

Claims sounding in fraud, including statutory consumer-fraud claims, must be pled with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).[8] All of Plaintiffs' fraud-based counts refer vaguely to misrepresentations or false statements, *see, e.g.*, Compl. ¶¶ 320, 343, 362, 377(iv), 460, 473, 476, 550, 567, *but Plaintiffs nowhere identify a single false statement by Intel on which they relied*. Therefore, to the extent these claims rely on affirmative misrepresentations, they fail as a matter of law. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (Rule 9(b) requires "the time, place, and specific content of the false representations." (citation omitted)). Count 3, under California's False Advertising Law, should be dismissed in its entirety for this reason, because that claim requires a plaintiff to allege affirmative

---

[8] *See Granados v. OnPoint Cmty. Credit Union*, 2023 WL 3570039, at *7 (D. Or. May 18, 2023) (Rule 9(b) applies to Oregon Unlawful Trade Practices Act); *Lamb v. Daimler Truck N. Am. LLC*, 2023 WL 2967918, at *2 (D. Kan. Apr. 17, 2023) (same for Kansas Consumer Protection Act); *Kampmann v. Procter & Gamble Co.*, 2023 WL 7042531, at *4 (C.D. Ill. Oct. 24, 2023) (same for Illinois Consumer Fraud and Deceptive Practices Act); *Song v. Champion Petfoods, USA, Inc.*, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020) (same for Minnesota consumer-fraud statutes), *aff'd*, 27 F.4th 1339 (8th Cir. 2022).

false or misleading statements, and does not cover omissions.  *See Kulp v. Munchkin, Inc.*, 2023 WL 4843340, at *7 (C.D. Cal. June 21, 2023).

### B.     The Complaint Does Not Allege Any Actionable Omission.

Plaintiffs' consumer-fraud claims center on the allegation that Intel failed to disclose supposedly defective design features in its CPUs.  Three district courts and three Ninth Circuit panels rejected materially identical allegations relating to the same fundamental design features in the prior litigation.  This Court should do the same.

### 1.     Plaintiffs Do Not Identify Any Defect Under Rule 9(b).

Rule 9(b) applies to claims of fraudulent omissions.  *Kearns*, 567 F.3d at 1125; *Price v. Apple, Inc.*, 2022 WL 1032472, at *5 (N.D. Cal. Apr. 6, 2022).  The Ninth Circuit explained in *AMD* what Rule 9(b) requires when the alleged fraud is a failure to disclose a computing design choice that turns out, years later, to be theoretically exploitable through novel security vulnerabilities.  To adequately plead the "nature of the defect," a plaintiff must identify a specific vulnerability, e.g., "Spectre-like attacks in particular," and may not rely on allegations that CPUs "are vulnerable to side-channel attacks generally" or are vulnerable generally "because of . . . some other subset of their features." *See AMD III*, 816 F. App'x at 42.[9]  Thus, the Ninth Circuit rejected the plaintiffs' strategy of defining a "subset of . . . features" as a "defect" with the benefit of hindsight.  *Id.*

The Complaint here adopts the exact strategy the Ninth Circuit rejected in *AMD*.  Recognizing that Intel could not have been aware of Downfall before that technique was discovered in August 2022, *after* all Plaintiffs purchased their devices, Plaintiffs instead allege that the "defect" consists of *earlier* design decisions that *later* made the Downfall vulnerability *possible*.  Compl. ¶¶ 75-96.  The *AMD* plaintiffs took the same tack, for the same reason: As that district court recognized, if Spectre was the defect, the plaintiffs could not allege that AMD knew about it before they purchased their devices. *Hauck v. Advanced Micro Devices, Inc.* ("*AMD II*"), 2019 WL 1493356, at *7 (N.D. Cal. Apr. 4, 2019).  But calling a design feature a "defect" is just another way of restating Intel CPUs' susceptibility

---

[9] Although the three Ninth Circuit opinions relating to speculative execution vulnerabilities are unpublished and non-precedential, they may be cited for their persuasive effect.  *See* Ninth Circuit Rule 36-3; *Ji v. Naver Corp.*, 2023 WL 6466211, at *14 n.11 (N.D. Cal. Oct. 3, 2023). That is particularly true here, where these unpublished decisions addressed materially indistinguishable allegations relating to earlier variants in the same class of security vulnerabilities.

to side-channel attacks generally based on a "subset of their features," and it is no more successful here than in *AMD*. *See also Intel III*, 582 F. Supp. 3d at 786 (rejecting allegation that "how Intel designed its processors equates to a 'defect'").

Indeed, under Plaintiffs' theory, whenever a novel security vulnerability is discovered, the failure to have disclosed, years earlier, every design decision that ultimately enabled that vulnerability would become fraudulent in retrospect. The limiting principle the Ninth Circuit recognized in *AMD*, grounded in Rule 9(b), rejects that result. The discovery of new security vulnerabilities is an inevitable, everyday occurrence that reasonable consumers expect will happen, and therefore such discoveries do not render earlier design decisions "defects." As the Ninth Circuit stated in *AMD*, consumers understand that their devices will not be "completely impervious to novel cybersecurity threats," and "the harm represented by [a] theoretical risk of a cybersecurity flaw that has not yet been successfully exploited" does not "outweigh[] the other benefits of [the manufacturer]'s processor design." *AMD III*, 816 F. App'x at 42-43.

*AMD*'s reasoning governs here because, like Spectre and Meltdown, Downfall is a "novel cybersecurity threat[]" that created a "theoretical risk . . . that has not yet been successfully exploited." *Id.* at 43-44. Plaintiffs do not allege any hack. The fact that a researcher working in a lab discovered Downfall many years after AVX instructions were introduced no more proves that Intel CPUs are defective than did the discovery of the earlier Spectre and Meltdown variants. *See Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) ("Garcia simply cannot maintain an action sounding in fraud based on Sony's supposed clairvoyance as to unspecified, future technological advancements in the field."). Reasonable consumers understand that new vulnerabilities are often found, and accept them as the inevitable consequence of increasingly complex devices with enhanced functionality and performance (including performance-enhancing features such as AVX).

## 2. The Complaint Shows Public Knowledge of the "Defect."

Even if Plaintiffs had adequately pled a defect, all of their omission claims would still fail. To plead an omission or concealment claim, a plaintiff must allege that the defendant "concealed or suppressed a material fact," *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009), and, as the *Intel MDL* court concluded, "[i]nformation that was known in the industry is not information that

. . . Intel fraudulently concealed or suppressed." *Intel II*, 2021 WL 1198299, at \*7.  There, the complaint cited numerous public sources to show the existence of the supposed defect.  *Id.*  Because the alleged defect was publicly known, the court concluded there was no omission.  *Id.*  Plaintiffs' approach here is the same as in the prior litigation, and the same conclusion applies.

Under Plaintiffs' theory that the defect was Intel implementing speculative execution without anticipating how that feature might later be hacked, the "defect" has been publicly known for years.  Plaintiffs expressly plead that the "defect" inherent in Intel's design "manifested" in January 2018 when news of Spectre and Meltdown "became public."  Compl. ¶ 8.  Just as in *Intel MDL*, Plaintiffs explain the nature of the "defect" by quoting *public* sources, all from *before* Plaintiffs purchased their devices.  *See, e.g., id.* ¶¶ 100, 102-05 (stating that Spectre and Meltdown "rely on hardware design flaws in the implementation of speculative execution" that "leak [a] victim's confidential information" (quoting James Sanders, *Spectre and Meltdown Explained: A Comprehensive Guide for Professionals*, TechRepublic (May 15, 2019))).  Those public sources also made clear that "Spectre and Meltdown are not singular flaws—they individually represent a class of closely-related variants."  *Id.* ¶¶ 97-109, 125, 141.  Therefore, there was no concealment and, thus, no actionable omission.[10]

### 3.    The Nationwide Omission-Based Claims also Fail Because Plaintiffs Do Not Allege Any Duty to Disclose.

The California-law omission claims also fail for additional reasons.  California law requires a plaintiff to allege that the defendant had a duty to disclose the allegedly omitted information.  *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California courts have generally rejected a broad obligation to disclose . . . .").  California law imposes stringent requirements for asserting a

---

[10] On the other hand, if the alleged "defect" is susceptibility to Downfall in particular, the omission claims still fail because Plaintiffs do not allege facts showing that Intel knew of Downfall when Plaintiffs purchased their devices.  To the contrary, the Complaint makes plain that the discovery of Downfall was a novel research achievement and that Intel learned of it in August 2022, after the last of Plaintiffs' purchases in June 2022.  Compl. ¶¶ 12, 155.  "[T]he failure to disclose . . . a defect of which [a manufacturer] is not aware" is not actionable.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-48 & n.5 (9th Cir. 2012) (affirming dismissal of omission claim for failure to allege facts showing defendant's knowledge of defect at time of sale).

12

defendant's duty to disclose an alleged product defect in particular, because otherwise "product defect litigation would become as widespread as manufacturing itself." *Daugherty*, 51 Cal. Rptr. 3d at 122.

The Ninth Circuit has described two different standards for determining whether a plaintiff alleging an omission in connection with a product has established a duty to disclose under California statutory and common law. In *Wilson*, the Ninth Circuit held that there is no duty to disclose an alleged design defect absent allegations that the product's failure "pose[s] safety concerns." 668 F.3d at 1142 (citation and internal quotation marks omitted). Six years later, in *Hodsdon*, the Ninth Circuit surveyed recent California cases and held that to establish a duty to disclose, a plaintiff must allege "that the omission was material; second, the plaintiff must plead that the defect was central to the product's function; and third, the plaintiff must allege one of the four *LiMandri* factors." 891 F.3d at 863 (referring to *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Ct. App. 1997)). Plaintiffs' claims fail under either the *Wilson* or the *Hodsdon* standard.

### a.    Plaintiffs plead no safety hazard.

*Wilson*'s safety-hazard requirement has never been overruled. *See Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *1 (9th Cir. May 19, 2022) (unpublished) (affirming dismissal of omission claim where plaintiffs "ha[d] not alleged a safety issue"; "*Wilson* is binding on us"). Because Plaintiffs do not allege any physical safety issue, their claim fails under the *Wilson* standard.

### b.    Plaintiffs plead no central functional defect.

In *Intel MDL*, both the district court and the Ninth Circuit ruled that Intel CPUs that perform their central function *of processing*, even if subject to a newly-discovered security vulnerability, have no central functional defect under *Hodsdon*. *Intel II*, 2021 WL 1198299, at *7-8; *Intel V*, 2023 WL 7211394, at *1. That conclusion applies here as well.[11] Plaintiffs do not, and cannot, allege that the

---

[11] Courts have described the central-function test in slightly different ways. In *Hodsdon*, the Ninth Circuit indicated that the test is satisfied only by defects that render the device "incapable of use by any consumer." 891 F.3d at 864. Some district courts, including the *Intel MDL* court, have applied a more relaxed standard than "incapable of use," evaluating instead whether the alleged defect was "*central* and important to the *product's function*." *Intel II*, 2021 WL 1198299, at *8 (emphasis in original). Intel maintains that the incapable-of-use standard is correct. *See Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 514 n.1 (9th Cir. 2021) (affirming dismissal; applying incapable of use standard because alleged latency "defect" that decreased modem performance by 25% or more did not "prevent[] the SB6190 Modem from performing a critical or integral function as a modem"). But the Court need not resolve this issue here because Plaintiffs' claims fail under both tests.

"defect" renders Intel CPUs incapable of performing their central function, which is to process instructions. As the *Intel MDL* district court held, and the Ninth Circuit affirmed, "the fact that Intel chips have for years allegedly been vulnerable to novel [security] attacks, that were never exploited, does not go to the *central function* of the microprocessors" because the CPUs "[n]ever stopped operating" as "the 'brains' of the computing device[s]." *Intel V*, 2023 WL 7211394, at *1 (emphasis in original).[12] The same is true here. None of the named Plaintiffs allege that they have stopped using their computers, and, of course, many millions of consumers also continue to use devices with Intel CPUs. *See, e.g.*, Compl. ¶ 4. There is no central functional defect.

Plaintiffs may seek to shift the focus to the alleged speed reduction that they contend results from the security patches for Downfall. But that alleged speed reduction is not the alleged "*defect*." To the contrary, Plaintiffs allege that when AVX instructions are executed speculatively—*i.e.*, using the allegedly defective design features—they *enhance* the speed of Intel's CPUs. Compl. ¶¶ 79, 130-33. Processors containing the alleged "defect" thus operated with no alleged diminution in performance for many years. The alleged performance impact is from *security patches* put in place in August 2023 to address the newly discovered Downfall vulnerability. *Id.* ¶ 184. Those patches plainly are not "defects" in Intel processors. *See Apple II*, 2022 WL 2064975, at *9 ("Apple only has a duty to disclose *physical* defects"; impact of patches "may not even be properly considered a 'defect' in the first instance" (emphasis in original) (citing *Hodsdon*, 891 F.3d at 864)).

In any event, even if the performance impact of the patch could count as a defect, it still would not satisfy the central-functional-defect standard. In *Intel* MDL, the district court concluded that even assuming the truth of the plaintiffs' allegation that Intel's patches for Spectre and Meltdown resulted in up to a 30% reduction in performance, that reduction was "insufficient to show a central function defect." *Intel II*, 2021 WL 1198299, at *9. The *AMD* court reached a similar conclusion as to AMD CPUs even though the *AMD* plaintiffs alleged that the performance reduction due to the mitigation of Spectre "can be up to 50%,"[13] which is equal to or greater than what Plaintiffs allege here. *See AMD II*,

---

[12] The California Court of Appeal approvingly cited the district court's decision in *Intel I* in *Nalick v. Seagate Tech. LLC*, 2021 WL 1135226, at *9 (Cal. Ct. App. Mar. 25, 2021) (unpublished).

[13] Ex. 6 (*AMD* SAC) ¶ 171.

2019 WL 1493356, at *17 (despite alleged "performance slowdowns" processors were not "unusable"); *compare* Compl. ¶¶ 194, 222 (alleging impacts of 39% or "nearly 50%").

### c.     Plaintiffs fail to satisfy any *LiMandri* factor.

To state any claim for an omission under California law, Plaintiffs must plausibly allege at least one *LiMandri* factor.  Those are: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *LiMandri*, 60 Cal. Rptr. 2d at 543 (citation omitted).  None applies here.

Plaintiffs do not and cannot allege any fiduciary relationship.  As to the second factor, for the same reasons the Complaint shows that the alleged "defect" was known publicly, *see supra* pp. 11-12, it also shows that Intel had no exclusive knowledge of any such defect.[14]  Plaintiffs attempt to attribute knowledge of the alleged design defect to Intel based on two different hacking techniques discovered in 2018, called AVX Spectre and NetSpectre.  Compl. ¶¶ 135-49.  But Plaintiffs allege these were merely other variants in the "Spectre and Meltdown class [of] attacks," *id.* ¶ 135, not the defect itself.  In any event, Plaintiffs' own allegations make plain that the new AVX Spectre and NetSpectre variants were "published" in "significant detail" in 2018, long before Plaintiffs purchased their devices.  *Id.* ¶¶ 136-39, 145-46.  Thus, Intel did not have exclusive knowledge of the new variants at the relevant time either.

Plaintiffs also fail on the third factor.  "Mere nondisclosure does not constitute active concealment"; rather, to satisfy this factor, Plaintiffs must allege "specific affirmative acts on the part of [Intel] in hiding, concealing or covering up the matters complained of."  *Herron v. Best Buy Co.*,

---

[14] Plaintiffs may contend that "exclusive knowledge" actually means "superior knowledge."  *See* Compl. ¶ 377(i).  But the California Supreme Court's governing formulation permits an omission claim only where the defendant has "sole knowledge" of information that was "inaccessible" to the plaintiff.  *Goodman v. Kennedy*, 556 P.2d 737, 745 (Cal. 1976); *see also* 5 B.E. Witkin, *Summary 11th Torts* § 916 (West 2023) (duty to disclose may arise "where the defendant alone has knowledge of material facts that are not accessible to the plaintiff").  The Ninth Circuit observed in *Hodsdon* that the "exclusive" position "appears to [be] the better reading of California law."  891 F.3d at 864 n.5.  That reading is confirmed by the common sense point that manufacturers invariably know more about their products than consumers, meaning that a "superior knowledge" standard would mean nothing at all and the *LiMandri* test would always be satisfied.

924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (internal quotation marks omitted).  Plaintiffs allege no such conduct.[15]

Finally, the fourth *LiMandri* factor is also inapplicable.  As explained in Section I, *supra* pp. 9-10, Plaintiffs have not identified any misleading partial representation by Intel.

### d.   Plaintiffs fail to allege any *material* omission.

Plaintiffs' own allegations also show that the alleged omission was not material.  They allege that the "defect manifested" in early 2018 when the "staggering" news of Spectre and Meltdown "became public."  Compl. ¶ 8.  Plaintiffs nonetheless purchased Intel CPUs despite this widespread public knowledge.  Therefore, Intel's alleged decade-long omission up to that point could not have been material to their purchasing decisions.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 971 (N.D. Cal. 2008) (materiality requires plausibly pleading that reasonable consumers would have acted differently had they known the omitted information), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Noll v. eBay Inc.*, 2013 WL 2384250, at *4 (N.D. Cal. May 30, 2013) (rejecting fraud-based claims where plaintiffs did not change behavior after learning of allegedly omitted facts).  *AMD III* underscores this point.  The Ninth Circuit affirmed dismissal of the claims of a plaintiff who allegedly overpaid for his AMD CPU *after* the public disclosure of Spectre because the allegedly omitted facts could not have caused him to "act differently [than] he . . . otherwise would have acted."  816 F. App'x at 43 (citation omitted).  The same conclusion applies here.

Plaintiffs insinuate that Intel misled the public in late 2018 by stating that it had "engineered a hardware fix for the design flaw" and "told customers that all of its CPUs' vulnerabilities had been 'mitigated.'"  Compl. ¶ 15.  The Complaint's actual factual allegations, however, identify *no* statement by Intel that its CPUs would be free from all potential new vulnerabilities, including newly discovered variants within this class of vulnerabilities.  No technology company could ever make that promise, because thousands of new security vulnerabilities are discovered each year, *see supra* pp. 2-3.

---

[15] Plaintiffs allege that Intel "block[ed]" publication of the Downfall discovery for a year, *see* Compl. ¶ 331, but the sources quoted in the Complaint make clear that Moghimi himself delayed disclosure "so that Intel had time to release microcode updates that can fix the vulnerability."  *Id.* ¶ 155.  In any event, this conduct took place *after* all Plaintiffs purchased their devices and thus could not have influenced those decisions.  *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 974 n.10 (C.D. Cal. 2014) (dismissing because allegedly false statements were made after purchase).

Plaintiffs point only to statements indicating that new Intel CPUs would include "hardware fixes *for Spectre and Meltdown*," *id.* ¶¶ 126-27, a statement that Plaintiffs do not and cannot allege was false. Indeed, by the time Plaintiffs purchased their devices, many other variants had been discovered and were mitigated or in the process of being mitigated. *Id.* ¶ 109; *see also* Ex. 4 (*Intel MDL* SAC) ¶ 709 (noting "almost two-dozen *new* exploit variations" post-dating Spectre and Meltdown and pre-dating Downfall, such as "Foreshadow," "Fallout" and "Zombieload" (emphasis in original)). And again, as the Ninth Circuit reasoned in *AMD*, consumers understand that that their devices will not be "completely impervious to novel cybersecurity threats." *AMD III*, 816 F. App'x at 43.

### 4. Plaintiffs Do Not Plausibly Allege Reliance on Any Omission.

Plaintiffs' failure to allege reliance is an independent ground for dismissal of the California omission claims. Reliance is a required element of UCL, CLRA, FAL, and common-law fraud claims. *Noll*, 2013 WL 2384250, at *4. As the Ninth Circuit recited in *Apple* on the same essential allegations related to the discovery of Spectre and Meltdown in Apple devices, pleading reliance on an omission requires plaintiffs to allege "that, had the omitted information been disclosed, [they] would have been aware of it and behaved differently." *Apple III*, 2023 WL 5950622, at *2 (alteration in original) (citation omitted). In that case, the court ruled that "[w]hile Plaintiffs have alleged that they would have behaved differently had Apple disclosed the defects, they have not sufficiently alleged that they would have been aware of any disclosure." *Id.* Similarly, here, Plaintiffs plead no facts from which the Court could infer "that Plaintiffs themselves were likely to encounter" any disclosure. *Id.*

## II. THE CLAIMS OF UNLAWFUL OR UNFAIR CONDUCT FAIL (Counts 2-3).

Plaintiffs also purport to allege unlawful and unfair (as opposed to deceptive) conduct in Counts 2 and 3, under the CLRA and UCL.[16] The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because

---

[16] Although Plaintiffs peremptorily drop the word "unfair" in several of the non-California counts, *see* Compl. ¶¶ 461, 478, 551, 568, these counts sound in fraud and do not explain how Intel's conduct was actionably *unfair*. To any extent that these conclusory assertions are intended to state a claim of *unfairness* (as opposed to *deception*), they fail for the reasons described in this section.

these statutes rely on the same standards, they are typically considered together.  *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).  These claims should be dismissed.

Plaintiffs have not stated a claim under the *fraudulent* prong of the UCL for the reasons stated in Section I above.  They also have not stated a claim under the *unlawful* prong of the UCL.  Plaintiffs do not identify any law that Intel allegedly violated other than "other statutes and common law prohibitions, including those recited in the other counts of this Complaint," Compl. ¶ 318.  Since all claims based on those other laws fail for the reasons described in this brief, the unlawful prong claim fails as well.  *See, e.g.*, *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) (Where "other claims fail, [the] UCL claims premised on 'unlawful' acts ha[ve] no basis and must also fail." (citations omitted)).

That leaves the *unfairness* prong—and Plaintiffs have not stated a claim of actionable unfairness either.  Although the correct standard for UCL unfairness claims is unsettled, *see Price*, 2022 WL 1032472, at *4, Plaintiffs fail whichever test may be applied.[17]  Some courts have applied a "tethering test," which "limits unfair conduct to that which 'offends an established public policy' and is 'tethered to specific constitutional, statutory, or regulatory provisions.'"  *Id.* (citation omitted).  Other courts have applied either of two similar balancing tests, which ask generally whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and compare the gravity of the alleged harm to the conduct's utility.  *Id.* (citation omitted).  Plaintiffs state no claim under any of these standards.

The Complaint pleads four supposed forms of unfairness: (1) Intel's "failing to disclose that its CPUs are defective when selling them to customers and to OEMs"; (2) "Intel's decisions not to properly redesign its hardware after Spectre and Meltdown"; (3) "Intel's mitigation substantially impairs the central operation of its Affected CPUs"; and (4) "Intel's decision to block publication of the Downfall defect for approximately a year."  Compl. ¶¶ 330-31.  None of these is viable.

---

[17] *Compare Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (suggesting that balancing test applies to claims brought by consumers) *with Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012) (applying both tests to UCL unfairness claim by consumers because California courts are divided about which applies); *Gunn v. FCA US, LLC*, 2023 WL 5418736, at *3-4 (N.D. Cal. Aug. 22, 2023) (noting *Epic Games*, but applying both tests).

18

*First*, "failing to disclose" the alleged defect is just Plaintiffs' failed fraud theory repeated. The courts in the prior litigation uniformly rejected such attempts to repackage fraud allegations as unfair conduct. "Any allegations that Intel sold its processors while knowing them to be defective is simply another way of advancing Plaintiffs' fraud-by-omission argument[,]" which fails for the reasons stated above. *Intel V*, 2023 WL 7211394, at *2; *see also AMD III*, 816 F. App'x at 43 (analyzing unfairness claim only "[t]o the extent . . . not also grounded in fraud"); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *11 (N.D. Cal. Sept. 1, 2010) (dismissing unfair claim because alleged unfair acts were "quintessential examples of fraud"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

*Second*, Intel's alleged failure to "redesign its hardware after Spectre and Meltdown" does not state an unfairness claim. Plaintiffs fail to plausibly allege—in the Complaint they filed six days after the Ninth Circuit affirmed dismissal with prejudice of all Spectre and Meltdown claims articulated over three consolidated complaints in that four-year nationwide MDL, *see Intel V*, 2023 WL 7211394 *passim*—that Spectre and Meltdown revealed any "defect" in Intel CPUs or that Intel knew of a defect. *See supra* pp. 7-8, 11-12. As the *AMD III* court held on materially identical allegations, an unfairness claim cannot advance where a plaintiff fails to plausibly allege that "the harm represented by the theoretical risk of a cybersecurity flaw that has not yet been successfully exploited outweighs the other benefits of AMD's processor design." 816 F. App'x at 42-43.

Moreover, California law does not permit claims for unfair design choices, as reflected in multiple California cases limiting product-based unfairness claims to situations involving a misrepresentation, physical safety hazard, or breach of warranty. *See Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 643-44 (Ct. App. 2006); *Daugherty*, 51 Cal. Rptr. 3d at 129-30. In *Bardin*, the plaintiffs claimed that it was unfair for Chrysler to design its cars with less durable (but cheaper) parts allegedly below the industry standard. 39 Cal. Rptr. 3d at 637. The California Court of Appeal held, as a matter of law, that Chrysler's design decision did not violate the UCL unfair prong. *Id.* at 641. In reaching this conclusion, the court rejected the plaintiff's public policy argument, noting that California precedent supported the opposite position that "a consumer can be 'fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.'" *Id.* at 644 (quoting *Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965) (en banc)). The

19

1   same conclusion applies here.  Any other rule would obliterate the distinction between consumer-

2   protection and product-liability law, and "product defect litigation would become as widespread as

3   manufacturing itself."  *Wilson*, 668 F.3d at 1141-42 (quoting *Daugherty*, 51 Cal. Rptr. 3d at 122).

4   *Third*, there is no viable claim that the patch for Downfall was actionably unfair.  First of all,

5   the patch is not a defect.  *See Apple II*, 2022 WL 2064975, at *9; *see also supra* p. 14.  Anyway, a

6   patch that *protects* users from security threats cannot plausibly be considered "unfair."  Also, the

7   mitigation was put in place *after* all Plaintiffs purchased their devices, and therefore could not have

8   caused them to overpay.  *See, e.g.*, *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d

9   962, 974 n.10 (C.D. Cal. 2014).  Finally, as set forth in Section I *supra*, the patch did not "substantially

10  impair[] the central operation of [the] Affected CPUs" or cause them to "no longer perform according

11  to merchantable and saleable standards or customer expectations," Compl. ¶ 331.  There is no

12  allegation that Intel CPUs, once patched, fail to perform *their central function of processing data*.

13  *Fourth*, that Intel "block[ed]" disclosure of Downfall until patches were in place is simply a

14  reiteration of Plaintiffs' failed omission claim.  *See, e.g.*, Compl. ¶ 331 (alleging "withholding highly

15  material information").  Also, this conduct, too, took place after Plaintiffs purchased and thus could

16  not have affected their purchasing decisions.  Added to that, as the *Intel MDL* court recognized, it is

17  not unfair to sell products during a security embargo; it is inherent in such situations that "the

18  manufacturer will always know more about any security vulnerability than consumers during an

19  information embargo."  *Intel IV*, 614 F. Supp. 3d at 794.  Intel's adherence—with the concurrence of

20  the researcher who discovered Downfall, Compl. ¶ 155—to the government-sanctioned procedure for

21  embargoing information was not actionably unfair.  To the contrary, it plainly could have endangered

22  consumers' information if Intel had disclosed Downfall before a patch was available.

23  **III.   THE IMPLIED WARRANTY CLAIMS FAIL (Counts 7, 8, 13, 16).**

24  For an implied-warranty claim to survive a motion to dismiss, the plaintiff must plausibly

25  allege that the product at issue has manifested a problem so grievous that it lacks "even the most basic

26  degree of fitness for ordinary use."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)

27

28

1  (citations omitted).[18]  The courts in the prior litigation dismissed all implied-warranty claims.  The

2  same result is called for here, because the alleged defect does not prevent Intel CPUs from performing

3  their ordinary function as processors.  Indeed, the notion that every one of the Intel CPUs powering

4  millions of computers around the United States right at this moment lacks "even the most basic degree

5  of fitness" is facially absurd.

6         In the *AMD* litigation, the district court dismissed the implied warranty claim because "whether

7  the Defect is Spectre, security vulnerabilities created by AMD's design, or '20 years' of 'serious

8  security vulnerabilities,' the [complaint] contains no allegation that the basic functionality of the

9  processors has been compromised by the Defect."  *AMD I*, 2018 WL 5729234, at *8 (citation omitted).

10  The Ninth Circuit affirmed that conclusion.  *AMD III*, 816 F. App'x at 44.  The *Intel MDL* court

11  agreed: "Simply labeling 'secure computing' as a 'basic' function of microprocessors does not show

12  that the CPUs are not performing their ordinary purpose."  *Intel I*, 2020 WL 1495304, at *13.

13         Here too, Plaintiffs may respond by citing the alleged performance impact of the mitigation

14  for Downfall, but that claim fares no better, for two reasons.  <u>*First*</u>, the alleged *defect* (design features

15  allegedly susceptible to a theoretical hack) has *no* performance impact.  The alleged slower processing

16  is *due to the patch that Intel made available*.  Plaintiffs do not identify any defect in that patch.  <u>*Second*</u>,

17  Plaintiffs have not pled that the performance impact renders their devices unfit for ordinary use.  To

18  the contrary, each Plaintiff expressly states that they continue to use their devices.  "[A]llegations of

19  continued use" of a product despite manifestation of a defect "belie [a] claim that it failed to serve its

20  ordinary purpose."  *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).

21         Alleging that the patch allegedly may materially decrease performance for some users, Compl.

22  ¶ 195, does not change the result.  The plaintiffs in earlier litigations made the same allegations.  Ex.

23  6 (*AMD* SAC) ¶ 171; Ex. 4 (*Intel MDL* SAC) ¶ 22.  As the *AMD* court ruled, "AMD processors are

24  certainly still operable even assuming they are patched, though the processors may be a little less

25  efficient . . . Plaintiffs [therefore] have failed to allege that the AMD processors did not have a basic

26  degree of fitness for ordinary use."  *AMD I*, 2018 WL 5729234, at *9.  The *Intel MDL* court agreed.

27  _____

28  [18] The same "ordinary purposes" standard applies under Kansas law, Kan. Stat. Ann. § 84-2-314, and Illinois law, 810 Ill. Comp. Stat. Ann. 5/2-314.  Plaintiffs assert no warranty claims under Oregon or Minnesota law.

The allegation of diminished performance (there, as much as 30%) simply "does not support a claim for breach of the implied warranty of merchantability." *Intel I*, 2020 WL 1495304, at *13.

The Court should dismiss Counts 7, 8, 13, and 16.

## IV.   THE NEGLIGENCE CLAIM FAILS (Count 6).

### A.   There Was No Breach of the Standard of Care.

Under California law, if a product "was not defective," then the manufacturer "could not be deemed negligent" in designing it. *Lambert v. Gen. Motors*, 79 Cal. Rptr. 2d 657, 661 (Ct. App. 1998). That principle is dispositive here.   Just as it is not a "defect" to implement performance-enhancing design features in a computing device without anticipating what a cybersecurity researcher might discover a decade later, implementing those design decisions cannot be deemed negligence, as a matter of law.  Because the only theory of negligence Plaintiffs plead here is defective design, *see* Compl. ¶¶ 406-07, Count 6 should be dismissed.

### B.   The Economic Loss Rule Bars the Negligence Claim.

The economic loss doctrine independently requires dismissal of the negligence claim.  There is generally no duty in tort to guard against a "purely economic loss" that "does not arise from actionable physical, emotional, or reputational injury to persons or physical injury to property." *S. Cal. Gas Leak Cases*, 441 P.3d 881, 885 (Cal. 2019) (alteration and citations omitted).  Plaintiffs here seek recovery only for economic losses.  *See* Compl. ¶¶ 222-23 (alleging overpayment and diminution in value).  Therefore, their negligence claim (Count 6) fails.

Plaintiffs attempt to plead around the economic loss rule by alleging damage to property other than the CPUs—their computers.  *See, e.g.*, Compl. ¶¶ 246-47, 400, 408 (asserting that devices have suffered "physical wear" such as "diminished battery life (for laptops) and (for all computers) a diminished expected life for the CPU and nearby components due to the CPU running for longer and at hotter temperatures").   That theory is a non-starter, because the Complaint alleges that these consequences result from *the patch*, not *the alleged defect*.  *Id.* ¶¶ 243-47.  There is no allegation that Intel negligently designed the Downfall patch.  The alleged harm caused by the patch is thus irrelevant.

But even if this form of harm were properly alleged to have resulted from negligence, the claim would still fail.  A plaintiff may only recover in tort for a product defect "when a product defect causes

damage to 'other property,' that is property other than the product itself." *In re Sony Vaio Comp. Notebook Trackpad Litig.*, 2010 WL 4262191, at *6 (S.D. Cal. Oct. 28, 2010) (citation omitted). CPUs and computers are not separate property. As the *AMD* court noted, because they are "integrally tied," it "makes no sense to analytically separate the processors here from the computers they are in." *AMD I*, 2018 WL 5729234, at *11; s*ee also In re Sony*, 2010 WL 4262191, at *7 (dismissing negligence claim because notebook computer and trackpad are not distinct for purposes of economic loss rule). The Complaint does not allege that Plaintiffs have any use for their CPUs outside of a computing device.[19] Any purported harm to other components of integrated computer systems does not qualify as damage to "other property" and therefore does not trigger the exception to the rule.

## V.   THE QUASI-CONTRACT AND UNJUST ENRICHMENT CLAIMS FAIL (Counts 5, 9, 12, 15, 19).

California law does not recognize a standalone cause of action for "unjust enrichment," so Plaintiffs instead bring a "a quasi-contract claim seeking restitution," *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Unjust enrichment claims are also pled in the alternative under other states' laws. Compl. ¶¶ 443-54 (Oregon); ¶¶ 479-90 (Kansas); ¶¶ 515-25 (Illinois); ¶¶ 574-84 (Minnesota). All these claims fail.

*First*, a restitution claim that sounds in fraud (including under consumer protection statutes) must be dismissed if the plaintiff fails to plead an actionable misrepresentation or omission. *Apple II*, 2022 WL 2064975, at *12; *see also Vallarta v. United Airlines Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020) (dismissing claim that defendant was unjustly enriched through "deceptive representations" where fraud claim failed) (citation omitted)). That is the case here. *See supra* pp. 9-10.

*Second*, as to all of these claims, even for states that recognize independent claims of unjust enrichment, the defendant's retention of benefits must be unjust or inequitable in some legal sense.[20]

---

[19] Although certain Plaintiffs bought standalone CPUs, the same was true in *AMD*, *see* Ex. 5 (*AMD* AC) ¶¶ 22-23, 25, where the district court applied the economic loss rule to dismiss tort claims because those standalone CPUs were integral to the computers in which they were installed.

[20] *See Larisa's Home Care, LLC v. Nichols-Shields*, 404 P.3d 912, 918-21 (Or. 2017); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678-79 (Ill. 1989); *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996); *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306-07 (Minn. 1996) (en banc).

Plaintiffs' claims fail under these standards because they have no basis other than the failed allegations in other counts of the Complaint.  The allegation that Intel was unjustly enriched because Plaintiffs purchased devices without knowledge of security vulnerabilities is "an insufficient basis to state a claim of unjust enrichment." *Intel IV*, 614 F. Supp. 3d at 795.  The Court should dismiss Counts 5, 9, 12, 15, and 19.

## VI.     CERTAIN CLAIMS FAIL FOR ADDITIONAL REASONS (Counts 7, 10, 11, 16-18).

### A.     Counts 7 and 16 Fail for Lack of Privity.

In addition to the reasons stated above, Plaintiffs' nationwide breach of warranty claim under California Commercial Code § 2314 (Count 7) and alternative breach of warranty claim under Illinois law (Count 16) fail as a matter of law because Plaintiffs do not allege the required element of privity of contract.  To state an implied warranty claim under § 2314, "a plaintiff . . . must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Similarly, under Illinois law, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003).  Plaintiffs do not plead that they purchased directly from Intel and thus do not satisfy the privity requirement.  They attempt to plead an exception from the requirement on the ground that they are intended third-party beneficiaries of the contracts between Intel and sellers, Compl. ¶¶ 422, 538, but that is unavailing.  As this Court previously held, California law does not recognize such an exception. *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *6 (N.D. Cal. Feb. 15, 2019).  And the Complaint does not plead that Intel knew "the identity, purpose and requirements" of Plaintiffs and "manufactured or delivered the goods specifically to meet those requirements," as would be required to invoke the exception under Illinois law. *See Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc*., 2009 WL 3147315, at *2 (N.D. Ill. Sept. 28, 2009) (citations omitted).

### B.     Count 8 Fails Because Plaintiffs Fail to Plead a California Transaction.

Count 8, for breach of implied warranty under California's Song-Beverly Act, fails because Plaintiffs do not plead that they purchased their devices in California.[21]  The Song-Beverly Act applies

---

[21] Two Plaintiffs, Darques Smith and Elizabeth Cordova, plead that they *reside* in California, but Ms. Cordova purchased her device when she lived in Oregon, and Mr. Smith states that he purchased his device from BestBuy.com but does not state where that purchase occurred.  Compl. ¶¶ 21, 33.

only to transactions within California.  *See Mandani*, 2019 WL 652867, at *6 n.5.  Count 8 should be dismissed on this ground in addition to those stated above.

### C.      Count 10 Fails for Additional Reasons.

In addition to the reasons stated above, Plaintiffs' alternative claim under the Oregon Unlawful Trade Practices Act (Count 10) fails because (1) the Oregon Plaintiff, Ms. Cordova, purchased her computer "principally for an advertising business that she runs," Compl. ¶ 33, and not for "personal, family, or household purposes," *see Immigr. Sols., Inc. v. Stiffler*, 2022 WL 462083, at *4 (D. Or. Feb. 15, 2022) (citation omitted), *aff'd*, 2023 WL 5567151 (9th Cir. Aug. 29, 2023); and (2) this statute covers only final consumer goods and does not reach suppliers of components like the Intel CPU inside Ms. Cordova's computer, *see Ave. Lofts Condos. Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1016-18 (D. Or. 2014).

### D.      Counts 11, 17, and 18 Fail Because They Do Not Plausibly Plead Intent.

The claims under the Kansas and Minnesota consumer-fraud statutes (Counts 11, 17-18) require an intent to deceive, or an intent that consumers rely on the seller's silence.  *See* Minn. Stat. Ann. § 325F.69(1); *Collins v. Ascension Via Christi Hosps., Inc.*, 2023 WL 3318315, at *7 (D. Kan. May 9, 2023).  Nothing in the Complaint yields a plausible inference that Intel intended consumers to believe that its CPUs were more secure than they actually were.  These claims fail as a matter of law for this reason, in addition to the reasons stated above.

<b>CONCLUSION</b>

For the reasons stated above, the Complaint should be dismissed.

Dated: January 25, 2024                 Respectfully submitted,

                                        WILLIAMS & CONNOLLY LLP

                                        By: /s/ David S. Kurtzer-Ellenbogen

                                        *Attorney for Defendant Intel Corporation*