David S. Kurtzer-Ellenbogen (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
dkurtzer@wc.com
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000 / FAX (202) 434-5029

Charles H. Samel (SBN 182019)
Lauren V. Neuhaus (SBN 327698)
STOEL RIVES LLP
charles.samel@stoel.com
lauren.neuhaus@stoel.com
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
(415) 617-8900 / FAX (415) 617-8907

*Attorneys for Defendant Intel Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DARQUES SMITH, et al., | Civil Action No. 4:23-cv-05761-HSG |
| Plaintiffs, | **DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY** |
| v. | |
| INTEL CORPORATION, | **[Fed. R. Civ. P. 26(c)]** |
| Defendant. | Complaint Filed: November 8, 2023 |
| | Date: Thursday, May 2, 2024<br>Time: 2:00 pm<br>Place: Oakland Courthouse<br>Courtroom 2, Fourth Floor |
| | Judge: Hon. Haywood S. Gilliam, Jr. |

## I.  INTRODUCTION

Nothing in Plaintiffs' opposition (ECF No. 40, "Opp.") to Defendant Intel Corporation's ("Intel's") motion to stay discovery (ECF No. 33, "Mot.") disturbs the conclusion that a temporary stay of discovery is warranted.  Intel's pending motion to dismiss (ECF No. 30, "MTD") seeks the dismissal of Plaintiffs' entire complaint and can be resolved without discovery.  A "preliminary peek" reveals it is a substantial motion to dismiss:  Three different district courts have already considered, and dismissed, materially identical allegations relating to earlier variants in the same class of security vulnerabilities—including in a multidistrict litigation against Intel itself (the "*Intel MDL*").  Reviewing the allegations in each of those cases *de novo*, three separate Ninth Circuit panels affirmed those dismissals.  No discovery was necessary for the disposition of any of those cases, *see* Mot. at 3-4 & n.3, and no discovery is necessary here.  Plaintiffs unsuccessfully attempt to distinguish this case from the prior dismissed cases, and their repeated speculation about "attacks in the wild" using this variant, *e.g.*, Opp. at 1—echoing similar speculation in prior cases—finds no support in the Complaint.  The Court should grant a temporary stay of discovery because it will promote efficiency and will not prejudice Plaintiffs.[1]

## II.  ARGUMENT

### A.   The Northern District's Two-Pronged Test Warrants a Stay.

Good cause exists to grant a discovery stay because Intel's motion to dismiss is "potentially dispositive of the entire case" and the pending motion to dismiss "can be decided absent discovery." *See In re Nexus 6p Prods. Liab. Litig.*, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017); *Hall v. Tilton*, 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010).  The Court possesses "wide discretion in controlling discovery."  *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

---

[1] Intel's motion to dismiss will be fully briefed in late March and is scheduled to be heard in early May.  *See* MTD at 1 (noticing hearing for May 2, 2024); *In re Nexus 6p Prods. Liab. Litig.,* 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (noting the limited nature of the requested stay where the hearing on the motions to dismiss was approximately three months away).

**1.      Intel's Motion To Dismiss Is Potentially Dispositive of the Entire Case.[2]**

Plaintiffs spend the majority of the Opposition asserting that the facts in this case are "starkly different than those at issue in [*Intel MDL*]." Opp. at 7.  Of course, the Court's "preliminary peek" at Intel's motion to dismiss "need not determine" whether the Court will grant that motion for it to justify a temporary stay of discovery while the sufficiency of the pleading is considered. *See In re Nexus 6p*, 2017 WL 3581188, at *2 (citation omitted) (granting stay where argument for dismissal was "potentially dispositive").  But equally importantly, Plaintiffs' effort to distinguish this case from the prior cases is demonstrably incorrect, given the judicially noticeable record of what was alleged, argued, and decided in the prior cases.

Intel's motion to dismiss and motion to stay set out in detail the striking similarities between this case and the prior cases, evident from the allegations in Plaintiffs' own Complaint.  Plaintiffs expressly characterize the variant at issue here ("Downfall") as part of "the same class of attacks" that were at issue in the three prior cases against Intel, Advanced Micro Devices, Inc. ("AMD"), and Apple relating to "Spectre," "Meltdown," and other variants. *E.g.*, Compl. ¶¶ 9, 15, 109, 166; MTD at 1, 4, 8.  As in those prior cases, Plaintiffs allege that a performance-enhancing technology developed many years ago (speculative execution) now turns out to be a "design defect" because of subsequent discoveries by a third-party security researcher. *E.g.*, Compl. ¶¶ 5, 9, 12-13, 20, 155; MTD at 4-5, 10-11.  As in those prior cases, Plaintiffs allege an omission yet rely on public sources predating their purchases to describe the supposed defect and acknowledge that the actual vulnerabilities—the proof of concept code—were discovered and made known to Intel only later. Compl. ¶¶ 135-51, 155-58; MTD at 7, 11-12.  As in those prior cases, Plaintiffs describe pejoratively the standard industry practice that followed, where a newly discovered security vulnerability remains embargoed (both by the manufacturer and by the researcher who found it) while a mitigation is being developed. Compl. ¶¶ 12, 252; MTD at 3-4, 7, 20.  As in those prior cases, Plaintiffs allege no actual hacks (whether of their own devices or of *any* devices) using Downfall, whether before or

---

[2] Plaintiffs assert that Intel is "misleadingly silent" and "makes no attempt to address" their non-California claims. Opp. at 12.  That is not correct.  Intel's motion to dismiss explains why every claim merits dismissal. *See* MTD at 9 n.8, 21, 23-25 (addressing non-California claims).

after patches were made available.  Compl. *passim*; Opp. at 2 (acknowledging that evidence of any actual hacks is "unknown"); MTD at 4.  As in those prior cases, Plaintiffs allege that those patches, although sealing off the vulnerability, come with significant performance impacts.  *E.g.*, Compl. ¶¶ 1, 17; MTD at 14-15.  And on the basis of these allegations, as in those prior cases, Plaintiffs assert various claims, principally sounding in fraud but also including other consumer protection theories.  Compl. ¶¶ 315-584; MTD at 5.  The above materially identical facts led to dismissal with prejudice of analogous claims in all three prior cases on Rule 12 motions, and Intel has argued that the same result is called for here.  *See* MTD *passim*.

Plaintiffs do not dispute any of the above similarities, but instead set out at length various other ways in which they contend that this case is different than *Intel MDL*.  Those assertions are easily countered by the prior litigation record.[3]  For example, Plaintiffs state that "[u]nlike in the Spectre and Meltdown litigation," they have alleged that the use of Downfall is "highly practical and difficult to detect."  Opp. at 2.  But the prior plaintiffs asserted exactly that on many occasions.  *See, e.g.*, Ex. 1 (Second Am. Compl., *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 18-md-2828 (D. Or. May 26, 2021), ECF No. 209 ("*Intel MDL* SAC")) ¶¶ 12 (alleging that the vulnerabilities "leave[] no fingerprints or forensic trace and are thus *exceptionally hard to detect*"),[4] 602-603 (citing Meltdown research paper, https://meltdownattack.com/meltdown.pdf, that describes how Meltdown "can be used in practice"), 671 (alleging that Spectre is "*difficult to detect*," where an attacker can "obtain sensitive information without leaving any 'fingerprints'"); Ex. 2 (*Intel MDL* 2/19/19 Tr.) at 62 (motion to dismiss hearing; arguing that an attack is "*very easy*"); Ex. 3 (*Intel MDL* 12/9/21 Tr.) at 39-40 (motion to dismiss hearing; arguing how a "bad actor" can "steal" the court's "bank account . . . information and your password"); *see also* Ex. 4

---

[3] All exhibits are to the Declaration of David S. Kurtzer-Ellenbogen filed contemporaneously with this Reply.  They are excerpts (with highlighting added) from public pleadings or transcripts from *In re Intel Corp. CPU Marketing, Sales Practices & Products Liability Litigation*, No. 18-md-2828 (D. Or.) and *Hauck v. Advanced Micro Devices, Inc.*, No. 18-cv-00447 (N.D. Cal.).  These are judicially noticeable documents for the reasons stated in Intel's Request for Judicial Notice, ECF No. 31; *see also Jen v. City & Cnty. of S.F.*, 2018 WL 2151457, at *3 n.2 (N.D. Cal. May 10, 2018) (taking judicial notice of court transcript).

[4] All emphasis is added unless noted.

(Second Am. Consol. Compl., *Hauck v. Advanced Micro Devices, Inc.* ("*AMD*"), No. 18-cv-00447 (N.D. Cal. Dec. 6, 2018), ECF No. 95 ("*AMD* SAC")) ¶¶ 3 (alleging that "neither the CPU nor the consumer are aware that the CPU's microarchitecture has been compromised" by a Spectre attack), 5 (alleging that an attack is "*easy to perform*"), 7 (alleging that AMD had "knowledge of *practical microarchitectural attacks*").

A second example: Plaintiffs state that unlike in prior litigation, they allege a performance degradation from patches ("as much [as] 50%"), which allegedly renders Intel CPUs essentially worthless. Opp. at 12 (citing Compl. ¶ 184); Compl. ¶¶ 222, 229, 417 (because of alleged defect, Intel processors "were not in merchantable condition" and "not fit for the[ir] ordinary purpose"). But the plaintiffs in *AMD* and *Intel MDL* alleged materially identical degradation ranges for the Spectre and Meltdown patches. *See, e.g.*, Ex. 4 (*AMD* SAC) ¶ 171 ("the performance penalty from mitigation can be up to 50%"); Ex. 1 (*Intel MDL* SAC) ¶ 226 ("Intel's mitigations degraded performance by 27% on average under the Default Mitigations and up to 49%."). The courts in both prior cases dismissed all implied warranty claims, finding that these alleged performance issues did not demonstrate that the processors lacked even a basic degree of fitness for ordinary use. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *17 (N.D. Cal. Apr. 4, 2019) (despite alleged "performance slowdowns" processors were not "unusable"); *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023) (affirming dismissal where processors never stopped performing their central function as "the 'brains' of the computing device[s]" (brackets in original)).

Plaintiffs repeatedly criticize Intel for referring to Downfall as a "theoretical hacking technique." *See, e.g.*, Opp. at 1, 3, 7-8, 12-13. But Plaintiffs concede that it is "unknown" whether there have been any actual hacks using this (now-patched) Downfall technique, Opp. at 2, and "theoretical" is the Ninth Circuit's term for a newly-discovered vulnerability that is not alleged to have been used in actual, in-the-wild hacks, not Intel's term. *See Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 43 (9th Cir. 2020) (referring to "the theoretical risk of a cybersecurity flaw that has not yet been successfully exploited"). The district court in the *Intel MDL* also used that term the same way on many occasions, *see, e.g.*, *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods.*

4

*Liab. Litig.*, 2020 WL 1495304 (D. Or. Mar. 27, 2020) ("publicly known" vulnerabilities "exposed in conceptual form" remain "theoretical" where there are "no allegations of any actual data breaches or 'hacks' to date"), and the Ninth Circuit, evaluating *de novo* the dismissal with prejudice of all claims in *Intel MDL*, cited the above phrasing from *AMD* as well. *In re Intel Corp.*, 2023 WL 7211394, at *2.

    Plaintiffs argue that unlike in the prior litigation, Downfall is not "theoretical" because (1) it allows hackers "direct access to AES encryption keys," (2) the security engineer who discovered Downfall demonstrated how it could be exploited, and (3) Intel would not undertake the burdens of mitigating Downfall if it were not a widespread problem. Opp. at 7-9. But, again, those exact same arguments were made by the *Intel MDL* plaintiffs in connection with Spectre and Meltdown and did not prevent dismissal with prejudice of all claims in that 487-page complaint. *First*, those plaintiffs argued that Meltdown "allow[s] an unauthorized user to read sensitive information *like passwords, login keys, and encryption keys*." Ex. 1 (*Intel MDL* SAC) ¶ 598. *Second*, those plaintiffs argued that Meltdown is "not theoretical, it's real," because the security researcher who discovered that vulnerability variant published a "proof of concept" paper that "has now been weaponized." Ex. 3 (*Intel MDL* Tr. 12/9/21) at 37. And *third*, those plaintiffs argued that "the best way to prove" that Intel's conduct poses a "non-speculative risk" is that "Intel is telling everybody who has their chips to download patches." Ex. 2 (*Intel MDL* Tr. 2/19/2019) at 77; *see also id.* at 117 (arguing that "it is not theoretical" because "[t]hey have issued all of these patches"). All of these allegations and arguments were made before and rejected before. *See In re Intel*, 2023 WL 7211394, at *1 (affirming on *de novo* review where "[t]he fact that Intel's chips have for years allegedly been vulnerable to novel [security] attacks, that were never exploited, does not go to the *central function* of the microprocessors" (emphasis and alterations in original) (quoting district court)).

    Intel's motion, if granted, would be dispositive of this case, thus satisfying the first factor in the Court's test.

### 2. Discovery Is Not Needed To Decide the Motion To Dismiss.

    Plaintiffs argue that the Court needs discovery to resolve Intel's motion to dismiss—that "Intel's Motion to Dismiss *Cannot* Be Granted Without Discovery." Opp. at 12-13. But Intel has

5

moved to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  *See* MTD *passim*.  That motion is based entirely on the allegations in the Complaint, facts that are properly subject to judicial notice, and the law.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962-63 (9th Cir. 2016); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  By definition, no discovery is necessary to resolve that motion.[5]  This satisfies the second factor in the Court's test.

    **B.**    **A Temporary Stay Will Promote Efficiency, Will Limit Undue Burden to Intel, and Will Not Prejudice Plaintiffs.**

Plaintiffs do not argue that they will be prejudiced by a brief discovery stay while the Court evaluates Intel's pending motion to dismiss.  Nor do they deny that the discovery they have stated they would seek, including expansive discovery that goes well beyond the defaults identified in the Federal Rules of Civil Procedure,[6] would impose a heavy burden on Intel.  In light of all of the circumstances, including the fact that the causes of action here are materially identical to those previously dismissed by other district courts and affirmed by the Ninth Circuit, a temporary stay of discovery is warranted.  *See Irving Firemen's Relief & Ret. Fund v. Uber Technologies*, 2018 WL 4181954, at *9 (N.D. Cal. Aug. 31, 2018) (noting that discovery in the absence of a well-pleaded complaint "risks unnecessarily expending the resources of the Court and the parties").

**III.**    **CONCLUSION**

For the foregoing reasons, Intel respectfully requests that the Court stay discovery pending resolution of Intel's motion to dismiss.

Dated: February 16, 2024          By:  */s/* David S. Kurtzer-Ellenbogen
                                                   David S. Kurtzer-Ellenbogen

                                             WILLIAMS & CONNOLLY LLP
                                             David S. Kurtzer-Ellenbogen (*pro hac vice*)
                                             dkurtzer@wc.com

---

[5] Plaintiffs engage in unfounded speculation about what they hope discovery would show.  *See, e.g.*, Opp. at 2, 8-9.  But Plaintiffs are not entitled to discovery if they have not sufficiently pled a claim.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (a purpose of Rule 12(b)(6) "is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery").

[6] Plaintiffs have stated that they intend to ask for eleven years' worth of ESI discovery, 300 hours of deposition time, and 50 interrogatories.  *See* ECF No. 33-1 at 2, ECF No. 34 (Joint Case Management Statement) at 11-12.

680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000 / FAX (202) 434-5029

STOEL RIVES LLP
Charles H. Samel (SBN 182019)
charles.samel@stoel.com
Lauren V. Neuhaus (SBN 327698)
lauren.neuhaus@stoel.com
1 Montgomery Street, Suite 3230
San Francisco, CA 94104
(415) 617-8900 / FAX (415) 617-8907

*Attorneys for Defendant Intel Corporation*

DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY
Civil Action No. 4:23-CV-05761-HSG