UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARQUES SMITH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>INTEL CORPORATION,<br><br>    Defendant. | Case No. 23-cv-05761-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 49 |

Pending before the Court is Defendant Intel Corporation ("Intel")'s motion to dismiss. Dkt. No. 49. The Court finds this matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court grants the motion in part and denies it in part.

**I.   BACKGROUND**

The Court previously discussed the relevant technical and factual aspects of this case in its order resolving Intel's first motion to dismiss. *See* Dkt. No. 45; *Smith v. Intel Corp.*, 745 F. Supp. 3d 853 (N.D. Cal. 2024). Accordingly, the Court provides only a brief recitation of those matters here.

Plaintiffs, individuals who purchased Intel's central processing units ("CPUs") and computers incorporating CPUs, allege that Intel knowingly sold CPUs with a security vulnerability. Dkt. No. 46 ("Compl."). According to Plaintiffs, this vulnerability, which Intel discovered in 2018, inhibited CPUs' "memory protections and memory access mechanisms," which comprise the "bedrock" of "modern, multi-tasking CPUs." *Id.* at 3. When Intel issued a software update (or "patch") intended to redress the vulnerability, Plaintiffs assert that it "disable[d] or handicap[ed] core features expected of . . . a modern CPU," leading to substantial

1  "performance degradation." *Id.* at 4, 24.  Plaintiffs also contend that Intel continued to sell CPUs
2  despite knowing that its patch would not fix the security vulnerability.  *Id.* at 24, 32, 38.
3        In short, Plaintiffs allege that Intel (1) knowingly sold an unsecure product and (2)
4  attempted to secure that product with patches that severely degraded performance and function,
5  putting the patches "on par with the disease." *Id.* at 40.  Based on these allegations, Plaintiffs filed
6  a class action complaint on behalf of themselves and all others similarly situated nationwide.  Dkt.
7  No. 1.  Intel moved to dismiss Plaintiff's original complaint in its entirety, Dkt. No. 30, and the
8  Court granted the motion with leave to amend in August 2024.  *See* Dkt. No. 45; *Smith v. Intel*
9  *Corp.*, 745 F. Supp. 3d 853 (N.D. Cal. 2024).  In September 2024, Plaintiffs filed the operative
10 amended class action complaint on behalf of two nationwide classes, alleging violations of
11 California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, et seq.),
12 Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, et seq.), and False Advertising
13 Law ("FAL") (Cal. Bus. & Prof. Code § 17500, et seq.).  Plaintiffs also brought claims for fraud
14 and quasi-contract/restitution under California law.  In the event a nationwide class is not certified,
15 Plaintiffs bring several claims in the alternative under Oregon, Kansas, Illinois, and Minnesota law
16 that largely track the violations alleged on behalf of the nationwide classes under California law.
17 Intel moves to dismiss the amended complaint.  Dkt. Nos. 49 ("Mot."), 51 ("Opp."), 52 ("Reply").

## II. REQUEST FOR JUDICIAL NOTICE

19       Along with its motion to dismiss, Intel filed a request for judicial notice.  *See* Dkt. No. 50.
20 The Court grants in part and denies in part the request.

### A. Legal Standard

22       As a general matter, district courts may not consider material outside the pleadings when
23 assessing the sufficiency of a complaint under Rule 12(b)(6).  *Lee v. City of Los Angeles*, 250 F.3d
24 668, 688 (9th Cir. 2001).  However, there are two exceptions to this rule: the incorporation-by-
25 reference doctrine and judicial notice under Federal Rule of Evidence 201.  *See Khoja v. Orexigen*
26 *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Both procedures permit district courts to
27 consider materials outside a complaint without converting a motion to dismiss into a summary
28 judgment.  *Id.*; *see Lee*, 250 F.3d at 688–89.

The incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Khoja*, 899 F.3d at 1002. This is to prevent a plaintiff from cherry-picking certain portions of documents that support her claims, while omitting portions that weaken her claims. *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id.* However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id.* Under the incorporation-by-reference doctrine, a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). If these conditions are met, the court may treat such a document as part of the complaint and may assume the truth of the document's contents for purposes of a motion to dismiss under Rule 12(b)(6). *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1002.

Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In *Khoja*, the Ninth Circuit discussed the judicial notice rule and incorporation by reference doctrine, noting that a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has held that if a court takes judicial notice of a document, it must specify what facts it judicially notices from the document. *Id.* Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an example, the Ninth Circuit held that for a transcript of a

3

1  conference call, the court may take judicial notice of the fact that there was a conference call on
2  the specified date, but may not take judicial notice of a fact mentioned in the transcript, because
3  the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the
4  [document] establishes." *Id.* at 999–1000.

### B. Analysis

Intel asks the Court to take judicial notice of 13 exhibits. Dkt. No. 50. Exhibits 1–4 and Exhibit 10 contain publicly available government publications or government-affiliated webpages. *Id.* at 2–3. These materials are judicially noticeable, as the accuracy of their contents is not subject to reasonable dispute. *See, e.g., Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (taking judicial notice of websites and their contents). Exhibits 5, 6, 7, and 13 are excerpts from complaints filed in prior cases against Intel and another company, Advanced Micro Devices, regarding the same or similar security vulnerabilities and exploits detailed in the operative complaint. *Id*. A court "may take judicial notice of court filings" in other cases "[t]o determine what issues were actually litigated." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, "a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause before them." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983). The Court therefore finds that Exhibits 5, 6, 7, and 13 are judicially noticeable for the existence of the allegations and issues adjudicated in these other suits.

Exhibit 9 is an editorial written by Intel CEO Brian Krzanich and published on Intel's website in March 2018. Exhibit 11 is a copy of Intel's "Architectures Software Developer's Manual." Exhibits 9 and 11 are incorporated by reference because Plaintiffs' amended complaint explicitly and repeatedly refers to excerpts of these exhibits. *See Khoja*, 899 F.3d at 998 ("[A] defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Accordingly, the Court grants Intel's request as to Exhibits 9 and 11.

Exhibit 12 is an excerpt from a publication titled "Windows Internals Part 1" and Exhibit 8

is a redline comparing Plaintiffs' original and amended complaints. Because Exhibit 8 and Exhibit 12 are not relevant to the Court's analysis, Intel's request for judicial notice as to those exhibits is denied. *See Ramachandran v. City of Los Altos*, No. 18-CV-01223-VKD, 2024 WL 3642193, at *5 (N.D. Cal. Aug. 1, 2024) ("[W]here a document is 'unnecessary' or irrelevant to a court's decision, the court need not take judicial notice.").

In sum, the Court grants Intel's request for judicial notice or incorporation by reference as to Exhibits 1–7, 9–11, and 13. Consistent with *Khoja*, the Court will consider the materials' contents but will not assume their truth. Intel's request is denied with regard to Exhibits 8 and 12.

## III.  MOTION TO DISMISS

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and quotations omitted).

When fraud is an essential element of a claim, Rule 9(b) imposes a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

5

1  particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp.*
2  *USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where,
3  and how" of the alleged conduct to provide defendants with sufficient information to defend
4  against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation and quotations
5  omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be
6  alleged generally." Fed. R. Civ. P. Rule 9(b). Even if the court concludes that a 12(b)(6) motion
7  should be granted, the "court should grant leave to amend even if no request to amend the pleading
8  was made, unless it determines that the pleading could not possibly be cured by the allegation of
9  other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation and
10  quotations omitted).

      **B.**    **Discussion – California Claims**

The nationwide classes in this action "assert nationwide claims based on the uniform application of California law against Intel." Compl. at 76. The California law claims at issue here encompass statutory claims under the UCL, CLRA, and FAL, as well as claims for common law fraud and quasi-contract/unjust enrichment. The Court grants Intel's motion to dismiss these claims, Dkt. No. 49, without leave to amend.

          **i.**    **Statutory Fraud Claims**

Plaintiffs allege that Intel made fraudulent omissions and misrepresentations in violation of the UCL, CLRA, and FAL. Intel moves to dismiss, arguing that Plaintiffs' pleadings lack particularity and omit required elements.

            **a.**    **Fraudulent Misrepresentation Claims**

Plaintiffs' fraudulent misrepresentation claims stem from a March 2018 editorial by Intel CEO Brian Krzanich, who wrote that Intel was redesigning "parts of the processor" to "introduce new levels of protection through partitioning" and "protective walls." Compl. at 71. Plaintiffs allege that these statements were false and misleading because Intel "had not implemented any hardware redesign associated with its memory management and access systems." *Id.* According to Plaintiffs, instead of "implementing [a] 'protective wall' as part of a hardware redesign," Intel retained the same hardware that "leaked information from privileged processes to concurrently

1   running processes running on the CPU." *Id.* at 72.

2        The Court begins by discussing the requirement that Plaintiffs must plead actual reliance in
3   order to allege a UCL, CLRA, or FAL violation based on a fraudulent misrepresentation or
4   omission. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022);
5   *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1119 (N.D. Cal. 2023)
6   (citing *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020)). Intel asserts that
7   Plaintiffs have not plausibly pled reliance on Mr. Krzanich's editorial. Mot. at 13. The Court
8   agrees. Plaintiffs state that Mr. Krzanich's editorial was distributed to the press and technical
9   public, thereby shaping "the marketing materials and sources relied upon by Plaintiffs." Compl. at
10  73. As a result, Plaintiffs allege that they were "misled when they reviewed sources and
11  marketing material" prior to purchasing Intel products. *Id*. But Plaintiffs do not allege that they
12  ever directly viewed, read, or depended on Mr. Krzanich's editorial. Nor do Plaintiffs allege
13  anything more than a tenuous, speculative connection between the editorial and whatever "sources
14  and marketing material[s]" they reviewed. Plaintiffs have therefore failed to plead actual reliance
15  on Intel's purported misrepresentations. *See Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050,
16  1063–64 (N.D. Cal. 2025) (collecting cases). Since Plaintiffs have not pled actual reliance on any
17  misrepresentation, the Court dismisses Plaintiffs' UCL, FAL, and CLRA claims brought under a
18  fraudulent misrepresentation theory.

### b. Fraudulent Omission Claims

#### 1. Reliance

21        As above, the parties dispute whether Plaintiffs pled reliance on an omission. *See* Mot. at
22  24; Opp. at 27. "An essential element for a fraudulent omission claim is actual reliance." *Daniel*
23  *v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "The standard for pleading reliance on
24  account of an omission is low." *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-
25  HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019); *see Anderson v. Apple Inc.*, 500 F.
26  Supp. 3d 993, 1017–18 (N.D. Cal. 2020). Plaintiff "may do so by simply proving that, had the
27  omitted information been disclosed, one would have been aware of it and behaved differently."
28  *Daniel*, 806 F.3d at 1225 (internal quotations and citation omitted). Here, Plaintiffs assert that

United States District Court
Northern District of California

"whether the Affected CPUs were defective would have been an important factor in Plaintiffs' . . . purchasing decisions" because Plaintiffs "would have paid less for the Affected CPUs (or computers incorporating Affected CPUs), or would not have purchased them at all, if they had known of the concealed and suppressed facts." Compl. at 99. Plaintiffs also allege that they relied on various "online discussions, reviews, and marketing materials . . . before deciding to purchase" affected Intel products. *Id.* at 7. At this stage, these allegations are sufficient to establish that Plaintiffs "would have been aware of" the alleged vulnerability and would have behaved differently had a disclosure been made. *See Daniel*, 806 F.3d at 1226.

### 2. Duty to Disclose

Intel also moves to dismiss Plaintiffs' fraudulent omission UCL, CLRA, and FAL claims on the basis that Plaintiffs did not sufficiently allege a duty to disclose under the heightened pleading standard imposed by Rule 9(b). Mot. at 16–22. To plausibly allege a fraudulent omission, the omission must either "be contrary to a representation actually made by the defendant," or "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citation and quotations omitted). Plaintiffs' pleadings adopt the second approach, asserting that Intel failed to disclose the existence of a material design defect in its CPUs. "In *Hodsdon*, the Ninth Circuit—synthesizing recent decisions of the California Courts of Appeal—explained that a plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff alleges the omission was material; (2) the alleged defect was central to the product's function; and (3) the defendant (a) is plaintiff's fiduciary, (b) has 'exclusive knowledge' of material facts, (c) 'actively conceals' a material fact, or (d) makes misleading partial representations." *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008 (N.D. Cal. 2023) (quoting *id.* at 863); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (laying out factors listed in (3), referred to as "*LiMandri* factors").[1] Intel challenges each of these prongs,

---

[1] Plaintiffs argue that a recent California Supreme Court decision—*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1 (2024)—eliminated the "central function" requirement for omissions-based claims under California law. Opp. at 17. *Rattagan,* on certification from the Ninth Circuit, addressed whether the fraud exception to the economic loss rule extends to fraudulent concealment claims. It does not mention *Hodsdon*, nor does it discuss the central function requirement or existing California appellate decisions setting forth that requirement. *See, e.g., Collins v. eMachines, Inc.*,

8

arguing that (1) the alleged defect was not central to the CPUs' function; (2) Plaintiffs have not plausibly alleged at least one *LiMandri* factor; and (3) the alleged omission was not material.[2]

The Court begins by addressing the requirement that the defect be central, which was fatal to Plaintiffs' original complaint. *See Smith*, 745 F. Supp. 3d at 863–65 ("[T]he lack of allegations connecting the latent security defect to core processing capabilities sinks Plaintiffs' claim."). As explained in the Court's prior order, Plaintiffs are required to plead that "the allegedly concealed *physical* defect was *central* to the product's function." *Hodsdon*, 891 F.3d at 864 (emphasis in original). Central functionality cannot be based on "subjective preferences" about a product but rather must render those products "incapable of use by any consumer." *Id.* Following *Hodsdon*, district courts have implemented the central functionality test with some variation: some focus more on whether the alleged defect affects the product's central function "even if the product still retains overall functionality and use," and others apply the "incapable of use by any consumer" test, based on the phrasing used in *Hodsdon*. *See In re Intel Corp. CPU Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 3:18-MD-2828-SI, 2021 WL 1198299, at *8 (D. Or. Mar. 29, 2021) (summarizing different approaches).

Intel asserts that the "central function" of a processor like CPUs "is processing" or "operat[ing] as the brains of the[] computer" and argues that Plaintiffs "have not pled, and cannot plead, that their Intel CPUs are 'incapable of use'" for this function. Mot. at 19; Reply at 11. Plaintiffs argue that their pleadings "directly allege that Intel's CPUs are defective as to their central functionality." Opp. at 25. The Court remains unpersuaded by Plaintiffs' arguments and

---

202 Cal. App. 4th 249 (2011); *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015). Accordingly, it is not, as Plaintiffs claim, "unambiguous" that a central function requirement no longer applies. Opp. at 18. Until California courts or the Ninth Circuit more directly address the central function requirement, the Court will continue to apply that requirement, consistent with other district court decisions post-*Rattagan*. *See, e.g., BRIDGET ERICKSON, et al., Plaintiffs, v. KIMBERLY-CLARK CORPORATION, Defendant.*, No. 24-CV-07032-AMO, 2025 WL 2105830, at *5 (N.D. Cal. July 28, 2025); *Clemmens v. Am. Honda Motor Co.*, No. 2:24-CV-09728-ODW (SKX), 2025 WL 1994018, at *9 (C.D. Cal. July 17, 2025); *Cortez v. Handi-Craft Co., Inc.*, No. 4:24-CV-3782-YGR, 2025 WL 1452561, at *5 (N.D. Cal. Apr. 29, 2025).

[2] The Court previously addressed Intel's argument that the alleged omission was not material and concluded that "at this early stage [Plaintiffs'] allegations sufficiently allege materiality." *See Smith*, 745 F. Supp. 3d at 863. Nothing in the amended complaint or Intel's renewed briefing changes the Court's prior analysis of this issue.

pleadings.  Plaintiffs state that the central function of a CPU is to "multitask" or enable the computer to "run multiple computer programs at the same time."  Compl. at 54.  Multitasking, which relies on the "protection and separation of hardware, memory, and program resources," safeguards data in different computer applications by segmenting it from other programs.  *Id.*  Multitasking is also important for computer function, improving operating speed and permitting users to concurrently execute several tasks or run multiple applications.  Id. at 54–59.  According to Plaintiffs, Intel's design defect subverts this central function.

    Plaintiffs misunderstand the meaning of "central" set forth in *Hodsdon*.  "*Hodsdon* requires that the *defect* be central to the product's function," such that the *product* is incapable of use.  *In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *9 (N.D. Cal. June 8, 2022), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) (emphasis in original).  *Hodsdon* does not, however, suggest that centrality is met simply because the "affected *component* (*i.e.*, the [CPU]) is central to the product's function."  *Id.* (emphasis in original).  Here, Plaintiffs plead that the alleged defect is central to CPU functionality, but they again have not plausibly alleged that the defect is so central to Intel products' function as to render those products "incapable of use."  *See In re Apple Processor Litig.*, 2022 WL 2064975, at *9 ("This distinction is slight but exemplified in cases such as this one, where the [d]efects impact a central component to the product without necessarily affecting the product's function."); *Hodsdon*, 891 F.3d at 864 ("A computer chip that corrupts the hard drive, or a laptop screen that goes dark, renders those products incapable of use by any consumer.").  *See also Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th Cir. 2021) ("Plaintiffs have not presented evidence that the latency defects so impair the [product's] ability to perform those functions that the [product] is unusable.").  In fact, Plaintiffs' complaint directly alleges that the "computational errors" associated with compromised multitasking were "not apparent to users and computer programmers."  Compl. at 55.  This admission, combined with Plaintiffs' assertions that billions of CPUs were affected and that individuals continued to use products with affected CPUs, indicates that the alleged defects did not "render[] the products unusable as sold."  *Knowles*, 2019 WL 3934781, at *16; Compl. at 4–9

10

1  (noting that billions of affected CPUs "are to this day defectively designed" and that purchasers
2  continued to buy and use allegedly defective CPUs).  Plaintiffs' allegations thus do not plausibly
3  plead that the purportedly compromised CPUs rendered Intel products incapable of use.  *See In re*
4  *Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:18-MD-2828-SI, 2020 WL
5  1495304, at *17 (D. Or. Mar. 27, 2020), *aff'd*, No. 22-35652, 2023 WL 7211394 (9th Cir. Nov. 2,
6  2023).  This distinction, while subtle, is fatal to Plaintiffs' claims.
7      Since Plaintiffs have not adequately pled that the alleged defect was central to the
8  functionality of Intel's products, the Court concludes that Plaintiffs have not properly alleged any
9  fraudulent omission claim under the FAL, UCL, and CLRA.  Accordingly, the Court grants Intel's
10 motion to dismiss these claims.

        **ii.**    **Common Law Fraud Claim**

12     In addition to Plaintiffs' CLRA, FAL, and UCL claims premised on fraudulent omissions,
13 Plaintiffs bring a claim for common law fraud.[3]  Compl. at 97–100.  This claim is predicated on
14 the same theory underlying Plaintiffs' statutory claims—that "Intel fraudulently concealed and
15 suppressed" or "omitted to disclose" an allegedly material CPU defect.  *Id.* at 98.  "Under
16 California law, a claim of fraud by omission requires a showing of (1) the concealment or
17 suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional
18 concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Edwards*
19 *v. FCA US LLC*, No. 22-CV-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022)
20 (quoting *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021)).  *See In re Intel Corp.*,
21 2021 WL 1198299, at *5.[4]  As explained above, Plaintiffs have not sufficiently alleged that Intel

---

[3] Whether styled as a claim for "fraud" or "fraud by omission," it is plain from the content of Plaintiffs' pleadings that this common law claim rests on a theory of fraud by omission.

[4] Courts in this district have observed that "[t]he state of the law on the duty to disclose under California law is in some disarray." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2018).  *See, e.g., Hammerling*, 615 F. Supp. 3d at 1085.  As relevant here, it is not clear whether "duty to disclose," as an element of California statutory fraud claims and common law fraud claims, has the same meaning across both contexts.  Some courts decline to disaggregate the pleading requirements for "duty to disclose" based on the element's statutory or common law application.  They simply apply *Hodsdon*'s reasoning in both contexts.  *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1174 (N.D. Cal. 2019); *Norcia v. Samsung Telecomms. Am., LLC*, 2018 WL 4772302, at *1–2 (N.D. Cal. Oct. 1, 2018); *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394, at *1

had a duty to disclose in this instance. Accordingly, the Court grants Intel's motion to dismiss Plaintiffs' common law fraud claim.

### iii. UCL Unlawful and Unfair Claim

California's UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Each prong—unlawful, unfair, and fraudulent—"constitutes a separate and distinct theory of liability." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *4 (N.D. Cal. Jan. 28, 2011). Here, in addition to claims under the UCL's fraudulent prong, Plaintiffs allege that Intel violated the UCL's unlawful and unfair prongs when it allegedly concealed the CPU defects. Compl. at 83. Intel moves to dismiss these claims.

The Court first considers Plaintiffs' unlawful prong claim. Plaintiffs can only survive a motion to dismiss brought under this prong if they plead sufficient facts to support another cause of action. *See Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1142 (2016). In short, "[i]f the predicate claims fail, the UCL claim also fails." *Hammerling*, 615 F. Supp. 3d at 1094. Here, Plaintiffs allege that Intel "engaged in unlawful trade practices by employing deception, deceptive acts or practices, concealment, suppression, or omission of material facts . . . in connection with the sale of the Affected CPUs." Comp. at 84. Plaintiffs also assert that "Intel's actions are further unlawful because they violated (and violate) other statutes and common law prohibitions, including those recited in the other counts of this Complaint." *Id*.

As an initial matter, Plaintiffs have not identified a specific predicate violation. *See TopDevz, LLC v. LinkedIn Corp.*, No. 20-CV-08324-SVK, 2021 WL 3373914, at *6 (N.D. Cal. Aug. 3, 2021). "In borrowing requirements from other statutes, the UCL provides its own 'distinct and limited equitable remedies for unlawful business practices, using other laws only to define

---

(9th Cir. Nov. 2, 2023). Other courts have found that a duty to disclose exists for common law fraud claims when plaintiff satisfies one of the *LiMandri* factors. *See Edwards*, 2022 WL 1814144, at *3; *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1056 (N.D. Cal. 2023). The parties here do not address this unsettled case law. But in this instance, the Court finds that these two approaches would not yield different outcomes in any event. *See In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *9 (N.D. Cal. Mar. 28, 2024), aff'd, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) ("When common law claims of fraud . . . are based on the same conduct on related statutory claims, these claims rise and fall together.").

1    what is 'unlawful.'" *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019)
2    (internal citations omitted). In this case, Plaintiffs do not indicate which "other laws" they intend
3    to use in defining what is unlawful. This deficiency is itself fatal to Plaintiffs' unlawful prong
4    claim. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL
5    claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he
6    bases the claim."). To the extent that Plaintiffs intend for this UCL claim to rest on the California
7    statutory fraud claims set forth in Plaintiffs' complaint—as the substance of this UCL claim
8    suggests—that too is futile. Since the Court granted Intel's motion to dismiss those claims, they
9    cannot serve as a predicate violation. *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028
10   (N.D. Cal. 2012) (Where "other claims fail, [the] UCL claims premised on unlawful acts ha[ve] no
11   basis and must also fail."). Accordingly, in the absence of a predicate offense, the Court grants
12   Intel's motion to dismiss Plaintiffs' unlawful prong claim.

13       The Court next considers Plaintiffs' claim under the UCL's "unfair prong." The standard
14   for these claims is unsettled. *See Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022 WL
15   1032472, at *4 (N.D. Cal. Apr. 6, 2022) (explaining competing standards); *Hodsdon*, 891 F.3d at
16   866. However, "[i]n this District, when plaintiffs['] claim under the unfair prong overlaps entirely
17   with the conduct alleged in the fraudulent and unlawful prongs of the UCL, 'the unfair prong of
18   the UCL cannot survive if the claims under the other two prongs . . . do not survive.'" *Eidmann v.*
19   *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (quoting *Hadley v. Kellogg Sales Co.*,
20   243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017)). Here, Plaintiffs allege that Intel violated the
21   unfair prong of the UCL by "failing to disclose that its CPUs [were] defective when selling them
22   to customers," "withholding highly material information about its products," and by "fail[ing] to
23   redesign its CPUs to address speculative execution flaws." Compl. at 88–89. These allegations
24   are the same ones Plaintiffs proffered to support their claims under the UCL's fraudulent and
25   unlawful prongs. *See id.* at 83–89. Since the Court dismissed Plaintiffs' claims under the other
26   two prongs, Plaintiffs' unfair prong claim predicated on the same conduct cannot proceed. *See*
27   *Hammerling*, 615 F. Supp. 3d at 1094 (dismissing unfair prong claim where "the conduct on
28   which Plaintiffs base their claims under all three UCL prongs is the same").

1    Accordingly, the Court grants Intel's motion to dismiss Plaintiffs' claims under the
2    unlawful and unfair prongs of the UCL.

### iv.    Quasi-Contract/Unjust Enrichment Claims

Intel moves to dismiss Plaintiffs' claim for quasi-contract and unjust enrichment. Mot. at 27. Although there is no standalone cause of action in California for "unjust enrichment," courts may "construe [a claim for unjust enrichment] as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Intel argues that the Court must dismiss this claim because Plaintiffs have not sufficiently pled an actionable misrepresentation or omission. The Court agrees. "[A] restitution claim based on fraud or consumer protection claims must . . . be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or omission." *In re Apple*, 2022 WL 2064975, at *12. Here, as the Court previously explained, Plaintiffs' "unjust enrichment claim relies on the same set of allegations as Plaintiffs' [f]raud [c]laims addressed above, namely that [Intel] fraudulently omitted information regarding the [security defect]," such that "their unjust enrichment claim relying on the same alleged fraudulent conduct must also be dismissed." *Id.*; *Smith*, 745 F. Supp. 3d at 865.[5] Intel's motion to dismiss is therefore granted as to Plaintiffs' quasi-contract and unjust enrichment claim.

### v.    Leave to Amend

Whether to grant leave to amend "remains within the discretion of the district court, which may deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (internal citation and quotations omitted). In the prior dismissal order, the Court detailed the deficiencies of Plaintiffs' original complaint and provided Plaintiffs with an opportunity to amend. *See Smith*, 745 F. Supp. 3d at 869. But Plaintiffs' amended complaint (1) is materially unchanged as to several claims and

---

[5] With respect to these claims, Plaintiffs' amended complaint does not materially alter the original pleadings.

(2) relies on substantially similar assertions that are simply re-packaged with added technical jargon. Plaintiffs provide no support for their assertion that "any [pleading] deficiency is curable." Opp. at 31. And Plaintiffs' prior amendments give the Court no reason to conclude that Plaintiffs will be able to state a viable claim under California law on their third try.

Given Plaintiffs' previous opportunity to amend the complaint and continued inability to articulate a plausible claim under California law, the Court concludes that granting further leave to amend these claims would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (quotation omitted). Consequently, the Court exercises its discretion to deny leave to amend.

### C. Discussion – Claims Brought in the Alternative Under Oregon, Kansas, Illinois, and Minnesota Law

Plaintiffs bring claims on behalf of state sub-classes under Oregon, Kansas, Illinois, and Minnesota law. These claims are pled in the alternative "[i]f Plaintiffs are unable to assert claims as part of a nationwide class." Compl. at 77. The Court denies Intel's motion to dismiss these claims on the ground that it did not adequately present its dismissal arguments. Both parties' briefing as to these claims is cursory. Intel's arguments and case law are insufficient for the Court to conclude that it has met its burden of showing that Plaintiffs failed to state a claim upon which relief can be granted as to every single one of the alternative state law claims. Fed. R. Civ. P. 12(b)(6). "[C]ourts are . . . passive instruments of government . . . [that] normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020). The Court will not make the parties' arguments for them.

### IV. CONCLUSION

The Court **GRANTS** in part and **DENIES** in part the motion to dismiss, Dkt. No. 49. Specifically, the Court **DISMISSES WITHOUT LEAVE TO AMEND** (1) Plaintiffs' UCL, CLRA, and FAL claims brought under both omissions and fraudulent misrepresentation theories; (2) Plaintiffs' claims under the unlawful and unfair prongs of the UCL; (3) Plaintiffs' California

15

common law fraud claim; and (4) Plaintiffs' claim for quasi-contract/unjust enrichment.

The Court **SETS** a case management conference on September 16, 2025 at 2:00 PM. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by September 9, 2025. In this statement, Plaintiffs should address whether they intend to proceed with litigating the alternative state law claims, or instead prefer to proceed directly to entry of judgment and pursue an appeal.

Should Plaintiffs decide to continue litigating the alternative state law claims, Intel may challenge those claims through a motion for judgment on the pleadings. The briefing accompanying any such motion would need to more substantively address the legal merits of each claim. And since the nationwide classes' claims, which were based on California law, have been dismissed in their entirety without leave to amend, the Court anticipates further motion practice regarding whether this Court would remain the proper venue to adjudicate the remaining claims in any event. *See* Compl. at 76.

**IT IS SO ORDERED.**

Dated:   8/15/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge