United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARQUES SMITH, et al.,

Plaintiffs,

v.

INTEL CORPORATION,

Defendant.

Case No. 23-cv-05761-HSG

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 70

Pending before the Court is Defendant Intel Corporation's motion to dismiss. Dkt. No. 70. The Court finds this matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7–1(b). For the reasons discussed below, the Court GRANTS the motion WITH LEAVE TO AMEND.

## I. BACKGROUND

The Court previously discussed the relevant technical and factual aspects of this case in its order resolving Intel's first motion to dismiss. *See* Dkt. No. 45; *Smith v. Intel Corp.*, 745 F. Supp. 3d 853 (N.D. Cal. 2024). Accordingly, the Court provides only a brief recitation of those matters here.

Plaintiffs, individuals who purchased Intel's central processing units ("CPUs") and computers incorporating CPUs, allege that Intel knowingly sold CPUs that are "defectively designed" and are vulnerable to attacks that compromise the security of the computer systems in which they operate. *See* Second Amended Class Action Complaint ("SAC") ¶¶ 2–3, 12–13, Dkt. No. 67. Specifically, Plaintiffs allege that the design of the 6th through 11th generation of Intel

CPUs ("affected CPUs") is defective because it enables speculative execution data to continue to have effects on the system after the data are discarded and allows speculative execution code to access system resources that should be unavailable to it. *See id.* ¶¶ 5–8, 16, 123–27. This, in turn, renders the affected CPUs vulnerable to "transient execution attacks" involving their speculative execution system, which enables an attacker to breach security boundaries that are supposed to exist between system resources and other programs, and to access memory and system resources that are supposed to be secure. *See id.* ¶¶ 124–42. The affected CPUs' design defect thus inhibits their "memory protections and memory access mechanisms," which comprise the "bedrock" of "modern, multi-tasking CPUs." *See id.* ¶¶ 12–13. Plaintiffs allege that they and other computer buyers did not know when they purchased affected CPUs that the CPUs were defectively designed, or that the defect created security vulnerabilities that could be mitigated only by installing a "performance-destroying" software patch. *See id.* ¶¶ 3–4, 21, 252–80.

The affected CPUs' design defect allegedly "manifested" in January 2018, when two transient execution attacks called Spectre and Meltdown exploited it. *Id.* ¶¶ 9, 132, 137–38. To mitigate the Spectre and Meltdown attacks, Intel rolled out multiple software patches, but they significantly impaired the CPUs' performance. *See id.* ¶¶ 143–55. Plaintiffs allege that, after these software patches were unsuccessful, it became clear that the affected CPUs' vulnerability to transient execution attacks like Spectre and Meltdown could be mitigated only by redesigning their hardware to ensure that their speculative execution system and functions did not create security vulnerabilities. *See id.* ¶ 141. In recognition of this, Intel allegedly "promised to redesign its CPUs to protect against speculative execution flaws" in March 2018. *Id.* ¶ 355. Specifically, on March 15, 2018, Intel's CEO, Brian Krzanich, published an editorial on Intel's website that allegedly "stated that Intel was redesigning its CPUs at the hardware level to ensure memory protection and access controls that would stand up against speculative execution vulnerabilities, including variants of Spectre and Meltdown" ("March 2018 editorial"). *See id.* ¶ 356. Mr. Krzanich indicated that the redesign would be implemented in specific CPU models expected to ship in the second half of 2018. *See id.* The editorial remained on Intel's website from the date of its publication, March 15, 2018, until it was removed in or around February 2023. *Id.* ¶ 357.

Plaintiffs allege that, contrary to the representations made in the editorial, Intel failed to redesign its CPUs to protect against speculative-execution-related vulnerabilities. *See id.* ¶¶ 358–65.

In the summer of 2018, Intel learned that its CPUs were vulnerable to new transient execution attacks called NetSpectre and AVX Clock Spectre, which were in the same class as the Spectre and Meltdown attacks but involved the affected CPUs' Advanced Vector Extension ("AVX") instructions. *See id.* ¶¶ 10, 167–79. AVX instructions perform critical CPU functionality associated with encryption, media, gaming, and the execution of memory-optimized computer programs. *See id.* ¶ 10. Intel allegedly learned of these new attacks in two ways. First, on July 26, 2018, *Ars Technica* reported that NetSpectre was a new speculative-execution-related attack that exploited vulnerabilities in CPUs' AVX instructions by allowing an attacker to remotely read the memory of a victim system without running any code on the system. *See id.* ¶¶ 176–79. The article reported that Intel had been informed of its CPUs' vulnerability to the NetSpectre attack. *See id.* ¶ 179. Second, in August 2018, a researcher named Alexander Yee published a blog post online stating that Intel CPUs could be vulnerable to a speculative-execution-related attack called AVX Clock Spectre, which "follow[ed] the same general approach" as Spectre but differed from Spectre in that it involved the conditional execution of AVX instructions. *See id.* ¶¶ 167–69. Mr. Yee's blog post stated that he had reported this information to Intel in June 2018. *Id.* ¶ 167. Plaintiffs allege that, even though Intel was aware as of June 2018 that the affected CPUs were defective because their design rendered them vulnerable to attacks involving their speculative execution system and AVX instructions, it failed to engineer hardware solutions to remedy the defect. *See id.* ¶¶ 182–84. Instead, Intel continued to sell affected CPUs that it knew were defectively designed and did so without disclosing the defect to consumers. *See id.*; *see also id.* ¶¶ 363–66.

In August 2023, a new transient execution attack called Downfall that targeted Intel CPUs' AVX instructions became publicly known. *See id.* ¶¶ 185–88. An article published on August 12, 2023 by *PC World* stated that Intel had been notified of Downfall in August 2022 but said that the public disclosure of the attack was delayed until August 2023 so that Intel could develop and release software updates to counteract it. *See id.* ¶ 186. Intel issued a software update to mitigate

the affected CPUs' vulnerability to Downfall after that attack became public. *Id.* ¶ 19. However, the software update degraded the performance of the affected CPUs by as much as 50%. *Id.* According to Plaintiffs, the fact that the affected CPUs were vulnerable to Downfall indicated that Intel had failed to fix its CPUs' hardware design flaws that made them vulnerable to transient execution attacks, and that Intel had ignored the warnings it received in the summer of 2018 about its CPUs' vulnerabilities to transient execution attacks that targeted their AVX instructions. *See id.* ¶¶ 198, 205.

Plaintiffs allege that Intel knowingly failed to disclose to consumers that the affected CPUs had a design defect that rendered them vulnerable to speculative-execution-related attacks involving their AVX instructions, like Downfall, and that mitigating that vulnerability would require a software patch that would significantly degrade their performance and function. *See, e.g.*, *id.* ¶¶ 11–21. As a result of Intel's "willful decision not to tell the truth about its processors," *id.* ¶ 21, Plaintiffs and others similarly situated allegedly suffered damages because they paid more for the affected CPUs than they were worth, *id.* ¶¶ 252–80.

Based on these allegations, Plaintiffs filed a class action complaint on November 8, 2023. Dkt. No. 1. Plaintiffs asserted claims against Intel on their own behalf and on behalf of proposed nationwide classes of similarly situated people for violations of California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as for fraud, restitution, negligence, and breach of implied warranty under California law. *See id.* In the alternative, Plaintiffs asserted claims under Oregon, Kansas, Illinois, and Minnesota law on behalf of state-specific classes. *See id.* Intel moved to dismiss the initial complaint in its entirety, Dkt. No. 30, and the Court granted the motion with leave to amend on August 15, 2024, *see* Dkt. No. 45. The Court stayed discovery "until it is clear whether Plaintiffs can successfully cure the defects identified" in its order of August 15, 2024. *See id.*

On September 12, 2024, Plaintiffs filed the amended class action complaint, asserting claims against Intel on their own behalf and on behalf of proposed nationwide classes of similarly situated people for violations of the UCL, CLRA, and FAL, as well as for fraud and quasi-contract/restitution under California law. Dkt. No. 46. In the alternative, Plaintiffs asserted claims

under Oregon, Kansas, Illinois, and Minnesota law on behalf of state-specific classes. *See id.* Intel moved to dismiss the amended complaint, Dkt. No. 49, and on August 15, 2025, the Court granted the motion in part and denied it in part, Dkt. No. 54. The Court granted the motion with respect to Plaintiffs' claims under California law without leave to amend, and it denied the motion with respect to claims brought in the alternative under Oregon, Kansas, Illinois, and Minnesota law on the ground that Intel did not adequately present its dismissal arguments in connection with those claims. *See id.* at 15.

Pursuant to a court-approved stipulation, Dkt. No. 66, Plaintiffs filed the SAC on October 23, 2025, Dkt. No. 67. Plaintiffs assert (1) a claim on behalf of a proposed "Multistate Consumer Protection Class" for violations of the consumer-protection statutes of 40 states, two territories, and the District of Columbia; and (2) 36 claims under the laws of 11 states, namely Arizona, Colorado, Florida, Illinois, Kansas, Maryland, Minnesota, North Carolina, Oregon, Texas, and Washington, which are asserted on behalf of proposed state-specific classes of consumers. *See id.* ¶¶ 439–1141.

Intel now moves to dismiss the SAC pursuant to the "bellwether" approach that the parties agreed upon. Dkt. No. 70 ("Mot."); Dkt. No. 75 ("Reply"). Under that approach, Intel's motion to dismiss tests the sufficiency of the SAC by addressing a maximum of eight claims selected by the parties. *See* Dkt. No. 66. The bellwether claims addressed in Intel's motion are based on the laws of Wisconsin, Florida, Illinois, Texas, North Carolina, and Washington. Plaintiffs oppose the motion to dismiss. Dkt. No. 74 ("Opp.").

## II. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment[,]' but a "court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th

Cir. 2018) (citation omitted).

Intel requests that the Court take judicial notice of 14 exhibits. *See* Dkt. No. 71. However, none of the exhibits are necessary to resolve the present motion to dismiss, and the Court has not relied on any of them for the purpose of deciding the motion. Therefore, the Court DENIES the request for judicial notice as moot. *See Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2019 WL 1493356, at *4 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) (denying request for judicial notice as moot because the court did not "rel[y]upon any of the documents" that were the subject of the request); *Ramachandran v. City of Los Altos*, No. 18-CV-01223-VKD, 2024 WL 3642193, at *5 (N.D. Cal. Aug. 1, 2024) ("[W]here a document is 'unnecessary' or irrelevant to a court's decision, the court need not take judicial notice.") (collecting authorities).

## III. MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and quotations omitted).

When fraud is an essential element of a claim, Rule 9(b) imposes a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation and quotation marks omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation and quotation marks omitted).

**B. Discussion**

Intel moves to dismiss the following claims in the SAC for failure to state a claim: (1) Count 1 to the extent that it is asserted under the Wisconsin Deceptive Trade Practices Act ("WDTPA"); (2) Count 8, for violations of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"); (3) Count 11, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (4) Count 25, for violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"); (5) Count 31, for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"); (6) Count 32, for fraud under Texas common law; and (7) Count 34, for violations of the Washington Consumer Protection Act ("WCPA").

In their opposition, Plaintiffs represent that they "no longer assert" Count 1 to the extent that it is predicated on the WDTPA.[1] *See* Dkt. No. 74 at 31. Plaintiffs otherwise oppose Intel's

---

[1] Plaintiffs continue to assert Count 1 to the extent that it is premised on the other statutes listed in the SAC. *See* SAC ¶¶ 439–67.

motion to dismiss the remaining claims, arguing that they are sufficiently pleaded.

Because Plaintiffs have abandoned Count 1 to the extent that it is premised on the WDTPA, the Court GRANTS Intel's motion to dismiss that claim, WITHOUT LEAVE TO AMEND.

The Court now turns to the question of whether the remaining bellwether claims, which are brought under the FDUTPA, ICFA, NCUDTPA, WCPA, TDTPA, and Texas common law, are sufficiently pleaded. Those claims are based on two theories: fraudulent misrepresentation and fraudulent omission.

### 1. Claims Based on Fraudulent Misrepresentation

Plaintiffs' fraudulent misrepresentation theory is based on allegations that Intel "promised" in the March 2018 editorial that it would redesign its CPUs at the hardware level to implement "protective walls" to protect against speculative-execution-related vulnerabilities in general. *See* SAC ¶¶ 358–65; *see also* Opp. at 6–9. Plaintiffs allege that this promise was false or misleading because Intel failed to redesign the affected CPUs to protect against the vulnerability that became known to Intel during the summer of 2018, which was a speculative-execution-related vulnerability associated with the CPUs' AVX instructions. All claims premised on this theory sound in fraud and are, therefore, subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to a claim "as a whole" if it is "grounded in fraud" regardless of whether fraud is an element of the claim and "irrespective of whether the substantive law at issue is state or federal").

Intel argues that all bellwether claims are subject to dismissal to the extent that they are premised on this theory for the reasons discussed below.

#### a. FDUTPA

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The three elements of a claim under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Ford Tailgate Litig.*, No. 11-CV-

02953-RS, 2015 WL 7571772, at *14 (N.D. Cal. Nov. 25, 2015) (quoting *Kia Motors Am. Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. Dist. Ct. App. 2008)).

Intel contends that Plaintiffs' misrepresentation-based claim under the FDUTPA is subject to dismissal because their allegations do not raise the inference that the March 2018 editorial was likely to deceive a reasonable consumer. Intel argues that Plaintiffs' interpretation of the editorial as promising hardware changes to protect against all speculative-execution-related attacks, including ones that were not known as of the date of its publication and were not identified in the editorial, contradicts the plain language of the editorial.

The Court agrees. Under FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and internal quotation marks omitted). "This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Id.* (citation and internal quotation marks omitted). Whether an alleged act or practice is deceptive under the FDUTPA "may be decided as a matter of law" and, accordingly, a court may dismiss a FDUTPA claim where the plaintiff fails to plausibly allege that a statement was likely to deceive a reasonable consumer. *See Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 442–45 (N.D. Cal. 2020) (granting motion to dismiss claim under the FDUTPA, in relevant part, for failure to plausibly allege that a representation was likely to deceive a reasonable consumer) (citations omitted); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1286−87 (11th Cir. 2007) (affirming dismissal of FDUTPA claim under Rule 12(b)(6) because no reasonable purchaser would have been misled in the manner alleged in the complaint); *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1192 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) (dismissing FDUTPA claim on a Rule 12(b)(6) motion in relevant part because "the conduct alleged [] does not rise to the level of an 'unfair or deceptive practice'").

Here, Plaintiffs' allegations, when construed in the light most favorable to them, do not raise the inference that any consumer would have been deceived by the March 2018 editorial in the manner they claim. Plaintiffs allege that the editorial was deceptive because it falsely promised or

United States District Court
Northern District of California

otherwise created the false impression that Intel would redesign the next generation of CPUs at the hardware level to protect against *any* speculative-execution-related vulnerabilities, including those associated with the CPUs' AVX instructions that became known to Intel *after* the editorial was published on March 15, 2018. *See* SAC ¶¶ 355–65, 161–80; *see also* Opp. at 10. However, the editorial's representation about hardware changes was limited to specific variants of Spectre and Meltdown that were known as of the date of its publication and that were specifically identified in the editorial, namely "Variants 2 and 3."[2] According to the SAC, the relevant portion of the editorial stated:

> *While Variant 1 will continue to be addressed via software mitigations, we are making changes to our hardware design to further address the other two. We have redesigned parts of the processor to introduce new levels of protection through partitioning that will protect against both Variants 2 and 3*. Think of this partitioning as additional "protective walls" between applications and user privilege levels to create an obstacle for bad actors.
>
> These changes will begin with our next-generation Intel Xeon Scalable processors (code-named Cascade Lake) as well as 8th Generation Intel Core processors expected to ship in the second half of 2018. As we bring these new products to market, ensuring that they deliver the performance improvements people expect from us is critical. Our goal is to offer not only the best performance, but also the best secure performance.

*See id.* ¶ 356 (emphasis added).

The relevant portion of the editorial did not include any explicit or implicit promise to make hardware modifications to protect against future variants of Spectre and Meltdown, or against other speculative-execution-related vulnerabilities that were not known to Intel as of March 15, 2018, such as the AVX-instruction-related vulnerabilities that became known to Intel in the summer of 2018 (i.e., NetSpectre and AVX Clock Spectre) and in August 2022 (i.e., Downfall). This interpretation of the editorial is supported by other allegations in the SAC, which indicate that the editorial was understood by the press as announcing hardware modifications only

[2] Notably, Plaintiffs do not allege that Intel failed to make hardware changes to protect against the two variants of Spectre and Meltdown mentioned in the editorial.

for the then-known Spectre and Meltdown variants identified in the editorial. *See* SAC ¶ 158 (alleging that, on the same day that the editorial was published (March 15, 2018), *AnandTech* published an article stating that "Intel is announcing that they have developed *hardware fixes for both the Meltdown and Spectre v2 vulnerabilities*, which in turn will be implemented into future processors") (emphasis added). Thus, no reasonable consumer would have understood the March 2018 editorial as promising hardware changes for vulnerabilities that were not known to Intel as of the date of its publication. Because Plaintiffs' allegations do not raise the inference that the representation upon which their FDUTPA claim is premised was false or misleading in the manner they allege in the SAC, the claim is subject to dismissal. *See Hauck*, 2019 WL 1493356, at *14 (dismissing FDUTPA claim on the ground that "Plaintiffs have not alleged that AMD made any representations that were 'actually false' when made").

Intel also argues that Plaintiffs do not satisfy the element of causation because they do not allege facts showing that the injuries purportedly suffered by the named Plaintiffs who purchased affected CPUs in Florida, namely Plaintiffs Tammy Knoll-Anderson and Brian Ross Rick, were caused by the March 2018 editorial.

The Court agrees. "[T]o be actionable [under the FDUTPA,] an unfair or deceptive trade practice must be the cause of loss or damage to a consumer." *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. Dist. Ct. App. 1998) ("*Laesser*"). Here, Plaintiffs do not allege any facts that causally connect the March 2018 editorial to the injuries that Plaintiffs Knoll-Anderson and Rick allegedly suffered. For example, they do not allege that those named Plaintiffs saw or were otherwise exposed to the editorial. Nor do they allege that the materials they reviewed prior to purchasing affected CPUs contained the March 2018 editorial's allegedly false or misleading representations. *See* SAC ¶¶ 36, 52. Accordingly, the Court cannot reasonably infer that the injuries allegedly suffered by Plaintiffs Knoll-Anderson and Rick were caused by the March 2018 editorial.

Plaintiffs argue that they are not required to allege that Plaintiffs Knoll-Anderson and Rick relied on the March 2018 editorial in order to allege causation under the FDUTPA, and that the allegations in the SAC are sufficient to satisfy the element of causation. Opp. at 17.

"[A] party asserting a deceptive trade practice claim [under the FDUTPA] need not show actual reliance on the representation or omission at issue'" to satisfy *the first element* of a claim under the statute, which requires showing that an act or practice was deceptive within the meaning of the FDUTPA. *See Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000)); *State, Off. of Att'y Gen., Dep't of Legal Affs. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007) (same). Showing actual reliance in that context is unnecessary because an objective test is used to determine whether an act or practice is deceptive. *See Carriuolo*, 823 F.3d at 984–85 ("To satisfy the first element [of a claim under the FDUTPA], the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances. Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, [a] party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (citations and internal quotation marks omitted). However, the fact that a plaintiff asserting a FDUTPA claim is not required to show actual reliance on a misrepresentation does not mean that he or she is not required to show causation, which is a separate element of the claim. *See Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *11 (S.D. Fla. June 30, 2022) ("While true that a FDUTPA plaintiff need not allege or prove actual reliance, i.e., that she "saw the [misrepresentation] and was subjectively deceived by it," *Carriuolo*, 823 F.3d at 985, there still must be a causal connection between the alleged deceptive act and the alleged damages.") (citing Fla. Stat. § 501.211(2) and *Laesser*, 718 So. 2d at 277); *see also Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (affirming summary judgment in favor of the defendant on a misrepresentation-based FDUTPA claim because the plaintiff "made no allegation and presented no evidence that the allegedly misleading statement caused [its] claimed damages").[3]

---

[3] Consistent with the authorities discussed above, the two authorities that Plaintiffs cite in their opposition hold that a plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue. *See Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1311 (11th Cir. 2023); *Bechor v. Simcenter, Inc.*, 394 So.3d 666, 669 (Fla. 3d DCA 2024). But neither

Here, even though Plaintiffs are not required to show reliance, they are required to show causation. As noted, the SAC lacks facts indicating that a causal connection exists between the March 2018 editorial and the injuries allegedly suffered by Plaintiffs Knoll-Anderson and Rick. The allegations to which Plaintiffs point in their opposition do not suggest any causal link. *See* SAC ¶¶ 255–72 (alleging a causal connection between the design defect at issue (not the March 2018 editorial) and a diminution in the value of the affected CPUs and computers that contained them); *id.* ¶¶ 36, 52 (alleging that Plaintiffs Tammy Knoll-Anderson and Brian Ross Rick reviewed certain materials prior to purchasing affected CPUs without specifying whether those materials contained the allegedly false or misleading representations in the March 2018 editorial). Accordingly, Plaintiffs' misrepresentation-based FDUTPA claim is also subject to dismissal for failure to plausibly allege causation.

The Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under the FDUTPA.

**b. ICFA**

To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 960 (7th Cir. 2020) (quoting *De Bouse v. Bayer,* 235 Ill. 2d 544, 550 (2009)).

Intel contends that Plaintiffs' misrepresentation-based claim under the ICFA is subject to dismissal for failure to allege causation. To establish causation under the ICFA, "the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *See De Bouse*, 235 Ill. 2d at 554. Where "a consumer has neither seen nor heard [the allegedly deceptive] statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause" for a claim under the ICFA. *See id*. Here, Plaintiffs do not allege facts showing that the

---

case holds that a plaintiff asserting a claim under the FDUTPA based on a misrepresentation is excused from alleging causation. *See id.*

named Plaintiff who purchased an affected CPU in Illinois, namely Brian Cameron, saw or was otherwise exposed to the March 2018 editorial. Because Plaintiffs' allegations do not plausibly support an inference that Plaintiff Cameron relied on the editorial and that the editorial was the proximate cause of his injuries, their ICFA claim is subject to dismissal on that ground. *See id.*; *see also Garland v. Children's Place, Inc.*, No. 23-cv-4899, 2024 WL 1376353, at *6 (N.D. Ill. Apr. 1, 2024) (holding that plaintiffs "cannot premise their ICFA claims on [the allegedly misleading] statements because they did not read or otherwise become aware of either statement before making their purchases").

Intel also argues that Plaintiffs' misrepresentation-based claim under the ICFA is subject to dismissal for failure to plausibly allege that a reasonable consumer would be deceived by the March 2018 editorial in the manner that they advance in the SAC. The Court agrees. To plead that a statement was deceptive under the ICFA, a plaintiff must allege facts showing that "a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled" by it. *See Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022). Here, for the reasons discussed above, no consumer would have been misled or deceived by the March 2018 editorial in the manner that Plaintiffs allege in the SAC. Accordingly, Plaintiffs' misrepresentation-based claim under the ICFA is subject to dismissal on that basis. *See Garland*, 2024 WL 1376353, at *6–7 (noting that, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified") (citation and internal quotation marks omitted); *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) ("Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law.") (citations omitted).

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under the ICFA.

**c. NCUDTPA**

The NCUDTPA prohibits unfair or deceptive act or practices in commerce. *See* N.C. Gen.

Stat. § 75–1.1. To state a claim for violations of the NCUDTPA, "a plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007).

Intel contends that Plaintiffs' misrepresentation-based claim under the NCUDTPA is subject to dismissal for failure to allege that any injuries suffered by the named Plaintiffs who purchased affected CPUs in North Carolina, namely Plaintiffs John Skipper and Lois Young, were proximately caused by the March 2018 editorial. A NCUDTPA claim "stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 88 (2013); *see also Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 211 (2009) (same). Here, the SAC does not contain allegations indicating that the named Plaintiffs who purchased affected CPUs in North Carolina, namely John Skipper and Lois Young, saw or were otherwise exposed to the March 2018 editorial. Accordingly, the Court cannot reasonably infer that Plaintiffs Skipper and Young relied on the March 2018 editorial and that the editorial proximately caused their injuries.

Intel also argues that Plaintiffs' allegations do not raise the inference that the March 2018 editorial had the capacity or tendency to mislead a reasonable consumer or created the likelihood of deception in the manner that Plaintiffs advance. The Court agrees. For the reasons discussed at length above, the Court finds that the March 2018 editorial could not have misled or deceived any consumer, or created the likelihood of deception, in the way that Plaintiffs allege in the SAC. Accordingly, Plaintiffs' misrepresentation-based claim under the NCUDTPA is subject to dismissal for failure to allege that the March 2018 editorial was plausibly misleading or deceptive within the meaning of the NCUDTPA. *See Walker v. Fleetwood Homes of N. Carolina, Inc.*, 362 N.C. 63, 72 (2007) (holding that "[a] practice is deceptive [under the NCUDTPA] if it has the capacity or tendency to deceive") (citation and internal quotation marks omitted); *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453 (1981) (holding that a plaintiff asserting a claim under the NCUDTPA must "show that the acts complained of possessed the tendency or capacity to mislead,

or created the likelihood of deception"); *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) ("Whether an act or practice is unfair or deceptive under the [NC]UDTPA is a question of law for the court.") (citations omitted).

The Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under the NCUDTPA.

**d. TDTPA**

To state a claim for violations of the TDTPA, a plaintiff must show that "(1) [he or she] is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *HHH Farms, L.L.C. v. Fannin Bank*, 648 S.W.3d 387, 416 (Tex. App. 2022) (citation and internal quotation marks omitted).

Intel argues that the SAC does not raise the inference that the March 2018 editorial was a producing cause of the alleged injuries that the named Plaintiff who purchased an affected CPU in Texas, Nathan Kahr, suffered. To establish that a misrepresentation was a producing cause of the plaintiff's injuries under the TDTPA, he or she must show "actual causation in fact," which "requires proof that an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred." *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). Here, Plaintiffs do not allege facts indicating that Plaintiff Kahr saw or was otherwise exposed to the March 2018 editorial. Accordingly, the Court cannot reasonably infer that the March 2018 editorial was a substantial factor in bringing about the injuries that he allegedly suffered. Plaintiffs' misrepresentation-based TDTPA claim is thus subject to dismissal on that basis.

Intel also contends that this claim should be dismissed for the additional reason that Plaintiffs' allegations do not raise the inference that the March 2018 editorial had the capacity or tendency to mislead consumers in the manner that Plaintiffs advance in the SAC. For the reasons discussed above, the Court finds that the March 2018 could not have misled or deceived any consumer in the way that Plaintiffs allege in the SAC. Plaintiffs' misrepresentation-based claim under the TDTPA is thus subject to dismissal on that ground. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 479–80 (Tex. 1995) (holding that, under the TDTPA, "an act is

false, misleading, or deceptive if it has the capacity to deceive an ignorant, unthinking, or credulous person" and noting that whether a statement is deceptive can be determined as a matter of law); *Larson v. Cobra Flex Printers LLC*, No. 1:23-CV-427-DAE, 2024 WL 3161480, at *3–4 (W.D. Tex. May 13, 2024) (granting motion under Rule 12(b)(6) to dismiss TDTPA claim premised on a misrepresentation because the statement upon which the claim was based was not misleading in the manner that the plaintiff alleged).

The Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under the TDTPA.

**e. Fraud under Texas Law**

A fraud claim under Texas law requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citation and internal quotation marks omitted).

Intel argues that this claim fails for failure to plead reliance. The Court agrees. As discussed above, the SAC does not raise the inference that the named plaintiff who purchased Intel CPUs in Texas, Nathan Kahr, relied on the March 2018 editorial because Plaintiffs do not allege that he saw it or that he otherwise was exposed to it.

Intel also contends that this claim must be dismissed for the additional reason that Plaintiffs' allegations do not indicate that the representation in the March 2018 editorial about a hardware redesign in certain models of Intel CPUs was deceptive. The Court once again agrees. As noted, a plaintiff alleging a fraud claim under Texas law must allege a material representation "which was false[.]" *See Zorrilla*, 469 S.W.3d at 153. For the reasons discussed above, the Court cannot reasonably infer that the March 2018 editorial falsely promised a hardware redesign to protect against speculative-execution-related attacks that were not specifically identified in the editorial, as Plaintiffs allege.

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under Texas law.

**f. WCPA**

To plead a claim under the WCPA, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington,* 166 Wash. 2d 27, 37 (2009).

Intel argues that Plaintiffs' claim under the WCPA fails for failure to allege causation. To plead causation under the WCPA, "the plaintiff must establish that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred as a matter of fact." *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (citation and internal quotation marks omitted). Plaintiffs' allegations do not satisfy this requirement because they do not indicate that the named Plaintiff who purchased an affected CPU in Washington, Justin MacLeod, saw or was otherwise exposed to the March 2018 editorial. *See id.* (holding that plaintiffs failed to plausibly allege causation under the WCPA because "the Complaint contains no allegations that Plaintiffs viewed or heard any of those statements or were otherwise aware of them at the time they purchased their Alexa-enabled devices"). Because the Court cannot reasonably infer that Plaintiff MacLeod based his purchasing decision on the March 2018 editorial, Plaintiffs' misrepresentation-based claim under the WCPA is subject to dismissal for failure to allege causation. *See Maple v. Costco Wholesale Corp.*, No. CV-12-5166-RMP, 2013 WL 5885389, at *6 (E.D. Wash. Nov. 1, 2013), *aff'd in part and vacated in part on other grounds*, 649 F. App'x 570 (9th Cir. 2016) (dismissing claim under the WCPA because "Plaintiff has failed to plead that he ever even read the alleged statements or that he based his purchasing decision on those statements").

Intel also contends that the WCPA fails for the additional reason that the March 2018 was not deceptive under the WCPA. "In order to establish a 'deceptive' act or practice [under the WCPA], the plaintiff must show that the defendant's act or practice 'had the capacity to deceive a substantial portion of the public.'" *See Gray*, 653 F. Supp. 3d at 859 (quoting *Panag,* 166 Wash. 2d at 50). In other words, the plaintiff must show that the act or practice was "likely to mislead a reasonable consumer[.]" *See id.* (citations omitted). Here, for the reasons discussed above,

Plaintiffs' allegations do not raise the inference that the March 2018 editorial would have misled or deceived any consumer in the way that Plaintiffs allege in the SAC. Plaintiffs' misrepresentation-based claim under the WCPA is thus subject to dismissal on that ground. *See id.* (dismissing WCPA claim because the allegedly deceptive statements were "not 'likely to mislead a reasonable consumer' in the manner alleged by Plaintiffs") (citations omitted).

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' misrepresentation-based claim under the WCPA.

**2. Claims Based on Fraudulent Omission**

Plaintiffs' fraudulent omission theory is based on allegations that Intel knowingly failed to disclose to consumers that the affected CPUs were defectively designed and were vulnerable to speculative-execution-related attacks associated with their AVX instructions, and that Intel knew of this defect starting in the summer of 2018. *See, e.g.*, SAC ¶¶ 362–66; Opp. at 7–8. Plaintiffs allege that Intel had a duty to disclose those matters because it had exclusive knowledge of them, and because Intel made statements about the "the qualities" of the affected CPUs that were incomplete and misleading given Intel's lack of disclosure with respect to the design defect at issue. *See, e.g.*, SAC ¶ 454. Plaintiffs further allege that, if Intel had disclosed the information in question to the public, the marketing materials and sources they relied upon when purchasing affected CPUs "would have included the truth about Intel's CPUs," such that they would not have overpaid for the affected CPUs they purchased. *See, e.g.*, *id.* ¶¶ 363–66, 252–80. All claims premised on this theory sound in fraud and are thus subject to the heightened pleading requirements of Rule 9(b). *See Kearns*, 567 F.3d at 1125.

Intel argues that all of Plaintiffs' omission-based claims are subject to dismissal to the extent that they are based on allegations that the affected CPUs' defect was a vulnerability that was specific to Downfall, which Intel should have disclosed to consumers before August 2022. *See* Mot. at 14, 17, Dkt. No. 70. Intel argues that such claims fail for failure to plead a "cognizable defect" because Intel did not learn about Downfall until August 2022 and could not have disclosed to consumers the affected CPUs' vulnerability to that attack before that date. *See id.* This argument misapprehends Plaintiffs' allegations. The defect alleged in the SAC is not a

vulnerability that was specific to Downfall. Instead, the alleged defect is the defective design of the affected CPUs, which made them vulnerable to any speculative-execution-related attack that targeted their AVX instructions. *See, e.g.*, SAC ¶¶ 180, 182. Plaintiffs allege that Intel was required to disclose that design defect to consumers as of the summer of 2018 because that is when Intel allegedly learned of it. *See, e.g.*, *id.* ¶¶ 180, 182–83. The Downfall attack is relevant to the design defect at issue because its emergence years after Intel learned of the defect allegedly demonstrated that Intel had not fixed the defect. *See id.* ¶¶ 198, 205, 207, 211.

Intel also argues that Plaintiffs' omission-based claims fail for other reasons, which the Court addresses below.

**a. WCPA**

Intel contends that Plaintiffs' omission-based claim under the WCPA fails because Plaintiffs have not alleged facts that raise the inference that it had a duty to disclose the alleged defect.

A "failure to disclose material facts" by a seller of goods can constitute a deceptive act that gives rise to a claim under the WCPA if the seller had a duty to disclose such facts. *See Griffith v. Centex Real Est. Corp.*, 93 Wash. App. 202, 213–14 (1998) (citation omitted). "[A] general duty on the part of a seller to disclose facts material to a transaction [exists] when the facts are known to the seller but not easily discoverable by the buyer." *See id.* at 214 (citations omitted). In other words, "[s]ellers have a duty to disclose only facts not easily discoverable by the buyer." *Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *4 (W.D. Wash. July 22, 2021), *aff'd sub nom. Cole v. Keystone RV Co.*, No. 21-35701, 2022 WL 4234958 (9th Cir. Sept. 14, 2022).

Here, the Court cannot reasonably infer that Intel had a duty to disclose that the affected CPUs were defectively designed and were vulnerable to speculative-execution-related attacks associated with their AVX instructions because Plaintiffs do not allege facts indicating that that information was "not easily discoverable" by purchasers of the affected CPUs. To the contrary: Plaintiffs' allegations suggest that the same reports that allegedly gave Intel notice of the vulnerability at issue were publicly available, and thus easily discoverable by consumers, as of the summer of 2018, which was before Plaintiff Justin MacLeod purchased an affected CPU in

Washington in November 2018. *See, e.g.*, SAC ¶¶ 176–79 (alleging that on July 26, 2018, *Ars Technica* reported that NetSpectre was a speculative-execution-related attack that exploited vulnerabilities in CPUs' AVX instructions); *id.* ¶¶ 167–69 (alleging that, in August 2018, a researcher named Alexander Yee published a blog post online stating that Intel CPUs may be vulnerable to a speculative-execution-related attack called AVX Clock Spectre, which exploited their AVX instructions). Plaintiffs' allegations that they "could not have reasonably discovered" that the affected CPUs were defectively designed and vulnerable to speculative-execution-related attacks involving their AVX instructions, *see, e.g.*, *id.* ¶¶ 368, 375, are conclusory and not entitled to a presumption of truth, particularly given that they are contradicted by other allegations showing that information about the vulnerability at issue was publicly available as of the summer of 2018.

Plaintiffs argue that they could not have reasonably discovered the defect despite the public availability of the reports at issue because information that is public is not necessarily "easily discoverable." *See* Opp. at 11. However, Intel cites authorities, which the Court finds persuasive, holding that where, as here, the information that was allegedly omitted was available on a publicly accessible website, it is reasonable to infer that the information was easily discoverable by the plaintiffs if they had chosen to look for it. *See Steele v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1226, 1234 (W.D. Wash. 2009) (holding that the defendant did not have a duty to disclose information that it allegedly failed to disclose because that information had been reported on a website by a third party and was thus easily discoverable by the plaintiffs had they chosen to look for it); *see also Cole*, 2021 WL 3111452, at *4 (same where the information allegedly omitted was "posted on a public website"). The only authority that Plaintiffs cite for the proposition that "'[e]asily discoverable' does not just mean technically available to the public," *see* Opp. at 20 (citing *Merriman Blum v. Amazon.com, Inc.*, No. C25-0977JLR, 2025 WL 3754248, at *2 (W.D. Wash. Dec. 29, 2025)), is distinguishable.[4]

[4] In *Merriman*, the court held that the plaintiff had plausibly alleged that the defendant had a duty to disclose that rice products it sold contained heavy metals because the plaintiff alleged that information about that defect was not easily discoverable by consumers. *See* 2025 WL 3754248, at *2. The *Merriman* court acknowledged that the plaintiff had alleged that three publicly

Because the Court cannot reasonably infer that Intel had a duty to disclose the allegedly-nondisclosed information, Plaintiffs' omission claim under the WCPA fails. *See Cole*, 2021 WL 3111452, at *4 (dismissing WCPA claim because the defendant had no duty to disclose facts that "were posted on a public website" and were "easily discoverable had Plaintiffs chosen to look for them").

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under the WCPA.

**b. NCUDTPA**

Intel contends that Plaintiffs' omission-based claim under the NCUDTPA is subject to dismissal because Plaintiffs have not alleged facts that raise the inference that it had a duty to disclose the alleged defect.

An act of concealment or omission can give rise to a claim under the NCUDTPA. *See City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 635 (M.D.N.C. 2020). However, "[f]or a concealment or omission to be actionable under the [NCUDTPA], the defendant must have had a duty to disclose that which was concealed or omitted." *Id.* (citations omitted). "[A] duty to disclose arises where: (1) there is a fiduciary relationship between the parties to a transaction; or (2) no fiduciary relationship exists yet a party has taken affirmative steps to conceal material facts from the other; or (3) no fiduciary relationship exists and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.* (citation and internal quotation marks omitted).

available articles had reported on the presence of heavy metals in rice, but it held that allegations about those articles were "insufficient" to raise the inference that information about the presence of heavy metals in the rice products at issue was "widely known and easily available to consumers[.]" *See id.* But the circumstances in *Merriman* were meaningfully different from those here. In *Merriman*, the publicly available articles discussed the presence of heavy metals in rice generally, and thus did not speak to whether the defendant's particular rice products contained such metals in the rice products at issue. By contrast, here the information that became publicly available in the summer of 2018 was specific to Intel CPUs, and in fact is the basis for Intel's own alleged knowledge of the defect.

The Court cannot reasonably infer that Intel had a duty to disclose that the affected CPUs were defectively designed and vulnerable to speculative-execution attacks associated with their AVX instructions based on any of the three grounds enumerated above. First, the Court cannot infer that Intel had a duty to disclose based on a fiduciary relationship between it and the named Plaintiffs who purchased affected CPUs in North Carolina (Plaintiffs Skipper and Young), because Plaintiffs do not allege that any such relationship existed. In fact, Plaintiffs do not allege that Plaintiffs Skipper and Young had *any* kind of relationship with Intel, nor could they, as their allegations indicate that Intel does not sell affected CPUs to end users.[5] *See* SAC ¶¶ 88–90, 245–47. Second, the Court cannot infer that Intel had a duty to disclose on the basis that it engaged in active concealment because Plaintiffs do not point to any allegations indicating that Intel took affirmative steps to conceal from consumers that the affected CPUs were vulnerable to speculative execution attacks involving their AVX instructions. The allegations in the SAC relating to concealment, *see, e.g.*, SAC ¶¶ 452–55, are conclusory and do not plausibly suggest that Intel took active steps to prevent consumers from discovering the information in question that went beyond mere non-disclosure. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 578 (N.D. Cal. 2019) (holding that a duty to disclose omitted information under the NCUDTPA was not plausibly alleged based on a theory of active concealment because the complaint alleged "mere nondisclosure" of a defect and "d[id] not contain allegations that [the defendant] actively concealed the Filter Defect or attempted to prevent Plaintiffs from discovering the Filter Defect beyond mere conclusory allegations"). Notably, Plaintiffs' allegations indicate that, instead of taking steps to conceal information about the CPUs' AVX-instruction-related vulnerability, Intel facilitated the dissemination of that information to the public. *See* SAC ¶ 167 (alleging that in the summer of 2018, Intel authorized the publication of a blog post by a third-party researcher about the

[5] Plaintiffs allege that Intel sells affected CPUs to equipment and design manufacturers, retailers and authorized resellers such as Newegg.com, Micro Center, and Best Buy, and other businesses. *See* SAC ¶¶ 88–90, 245–47. It is therefore reasonable to infer that none of the named Plaintiffs could have purchased an affected CPU from Intel. That inference is confirmed by the fact that Plaintiffs do not allege that any of the named Plaintiffs purchased an affected CPU from Intel. *See id.* ¶¶ 23–79.

United States District Court
Northern District of California

vulnerability of Intel's CPUs to a speculative-execution-related attack that targeted their AVX instructions). Third, the Court cannot infer that Intel had a duty to disclose on the basis that it had exclusive knowledge of the information in question because, for the reasons discussed above, Plaintiffs' allegations indicate that consumers had access to that information and could have discovered it through reasonable diligence as of the summer of 2018, which is when the information was made publicly available. *See Ahern*, 411 F. Supp. 3d at 575 (holding that a duty to disclose omitted information about a defect was not plausibly alleged under the NCUDTPA because the plaintiffs failed to allege "how [they] did not have access to or could not learn" about information concerning the defect that was available online).

Plaintiffs argue that even if Intel did not have a duty to disclose under the NCUDTPA based on the criteria discussed above, it had a "duty to speak fully and fairly" about the alleged defect given that it previously made statements "on the subject matter of its omission[.]" *See* Opp. at 24. This argument fails for two reasons. First, Plaintiffs rely on *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997) (citing *Shaver v. N.C. Monroe Const. Co.*, 63 N.C. App. 605, 614 (1983), *review denied*, 310 N.C. 154 (1984)), which holds that "even if a party otherwise has no duty to disclose a particular matter, should that party speak about it, then a full and fair disclosure may be required." However, that case did not address any claims under the NCUDTPA and is thus inapposite. *See id.* (addressing, in relevant part, claims for fraudulent misrepresentation and negligent misrepresentation under North Carolina law). Second, even if *Breeden's* holding about the duty to speak were relevant here, and even if the Court found it persuasive, Plaintiffs have not shown that Intel had such a duty. The only statement by Intel that Plaintiffs argue triggered a duty to speak fully and fairly is the March 2018 editorial. *See* Opp. at 12–13. However, that editorial did not trigger a duty to speak about the affected CPUs' vulnerabilities relating to AVX instructions because it did not address that subject. Instead, as discussed in more detail above, that editorial spoke only about hardware changes that would be made to protect against specific variants of Spectre and Meltdown that were known to Intel as of the date of its publication (March 15, 2018) and that were specifically mentioned in the editorial. The editorial did not discuss other variants or vulnerabilities that were not known to Intel as of the

United States District Court
Northern District of California

date of its publication, such as the affected CPUs' speculative-execution-related vulnerability associated with AVX instructions that is at issue in this litigation.

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under the NCUDTPA.

**c. Fraud by Non-Disclosure Under Texas Law**

Intel argues that Plaintiffs' omission-based claim under Texas law fails because Plaintiffs have not alleged facts that raise the inference that it had a duty to disclose the alleged defect.

To plead fraud by non-disclosure under Texas law, a plaintiff must allege: "(1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019) (citations omitted). A duty to disclose under Texas law exists where: (1) there is a confidential or fiduciary relationship between the plaintiff and the defendant; (2) the defendant discovered new information that made its earlier representation untrue or misleading; (3) the defendant made a partial disclosure that created a false impression; or (4) the defendant voluntarily disclosed some information, creating a duty to disclose the whole truth. *See id.* at 220 (citations omitted).

Here, the Court cannot infer that Intel had a duty to disclose that the affected CPUs were defectively designed and were vulnerable to speculative-execution attacks associated with their AVX instructions based on any of the circumstances enumerated above. A duty to disclose cannot be inferred based on a confidential or fiduciary relationship between Intel and the named Plaintiff who purchased an affected CPU in Texas, Plaintiff Kahr, because Plaintiffs do not allege that such a relationship existed.[6] To the contrary: Plaintiffs' allegations indicate that Intel and Plaintiff Kahr

[6] A fiduciary relationship arises in the context of "certain formal relationships, including attorney-client, partnership, and trustee relationships," and can also arise from "a moral, social, domestic or purely personal relationship of trust and confidence." *See Bombardier*, 572 S.W.3d at 220 (citations and internal quotation marks omitted). By contrast, "[a] confidential relationship is one

United States District Court
Northern District of California

did not have *any* kind of relationship at all, as Kahr purchased an affected CPU from a third party (Newegg.com), not Intel. *See* SAC ¶ 39. Plaintiffs argue that there was a fiduciary relationship between Intel and Plaintiff Kahr because Intel had superior knowledge of the information that Intel failed to disclose, but that argument is unpersuasive because they have not cited any authority supporting a finding of a fiduciary or confidential relationship on that basis under Texas law. *See* Opp. at 11–12. A duty to disclose also cannot be inferred based on the other three enumerated circumstances that could give rise to it. Those circumstances require allegations that Intel have made an incomplete or partial representation or disclosure concerning the matters that it failed to disclose, but Plaintiffs do not point to any such prior incomplete or partial representation or disclosure. The only statement by Intel to which Plaintiffs point is the March 2018 editorial. *See* Opp. at 12–13. However, that editorial was not an incomplete or partial representation concerning the matters that Intel allegedly failed to disclose because, as discussed in more detail above, it did not contain any representations or disclosures about vulnerabilities that Intel had not discovered as of the date of its publication, such as the affected CPUs' speculative-execution-related vulnerability associated with AVX instructions that is at issue in this litigation.

Intel also argues that this claim fails for the additional reason that Plaintiffs allege that the same information that gave Intel notice of the affected CPUs' vulnerability to speculative-execution attacks associated with AVX instructions was publicly available as of the summer of 2018. Intel argues that this means that the Court cannot infer that the named Plaintiff who purchased an affected CPU in Texas, Plaintiff Kahr, was ignorant of the facts that Intel allegedly failed to disclose before he purchased the CPU in 2020. The Court agrees. As noted, a plaintiff asserting a claim for fraud by non-disclosure under Texas law must plausibly allege, among other things, that he or she "was ignorant of the facts [that were not disclosed] and did not have an equal opportunity to discover them[.]" *See Bombardier*, 572 S.W.3d at 219–20. Plaintiffs' allegations

---

in which the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *See id.* (citations and internal quotation marks omitted). Plaintiffs do not allege facts suggesting that Intel and Plaintiff Kahr had a relationship that could give rise to a fiduciary or confidential relationship under these standards, and based on what they have already pled, they could not plausibly do so.

do not satisfy that requirement. As discussed above, Plaintiffs' allegations indicate that the same reports that allegedly put Intel on notice that the affected CPUs were vulnerable to speculative-execution attacks associated with their AVX instructions became publicly available as of the summer of 2018, *see* SAC ¶¶ 167–69, 176–79, 182, which was before Plaintiff Kahr purchased an affected CPU in Texas in July 2020, *see id.* ¶ 39. Plaintiffs' allegations thus defeat any inference that Plaintiff Kahr did not have an equal opportunity to discover the defect at issue before he purchased an affected CPU in July 2020.

The Court therefore GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under Texas law.

**d. TDTPA**

Intel argues that Plaintiffs' omission-based claim under the TDTPA fails because Plaintiffs have not alleged facts that raise the inference that it had a duty to disclose the defect.

A failure to disclose information concerning goods or services that was known by the seller at the time of the transaction can constitute a false, misleading, or deceptive act that gives rise to a claim under the TDTPA. *See* Tex. Bus. & Com. Code § 17.46(b)(24). To state a claim under the TDTPA based on an omission, a plaintiff must allege facts indicating that the defendant had a duty to disclose the facts that it allegedly withheld from consumers. *See Palma v. Sonic Momentum VWA, L.P.*, No. CV 4:09-2974, 2010 WL 11652068, at *5 (S.D. Tex. Apr. 16, 2010) (holding that, "to be liable for . . . a violation of the [T]DTPA, the defendant must have had a duty to disclose the information that was purportedly withheld") (citing *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001))[7]; *accord Rosas v. Hatz*, 147 S.W.3d 560, 565–66 (Tex. App. 2004) (noting that a defendant can be liable for a TDTPA claim premised on statements that omitted material information if, among other things, the defendant "had a duty to disclose it, and failed to disclose it"); *Steele v. Goddard*, No. 10-12-00111-CV, 2013 WL 3013671, at *7 (Tex. App. June

[7] Plaintiffs imply that Intel has not shown that a plaintiff asserting an omission-based claim under the TDTPA is required to allege that the defendant had a duty to disclose, but they have neither shown that *Palma* was wrongly decided nor pointed to any other authority showing that a duty to disclose is not required. *See* Opp. at 11.

13, 2013) (holding that the defendant was entitled to judgment with respect to TDTPA claim premised on omissions because the plaintiff failed to show that the defendant "had any duty to disclose" information that he allegedly omitted). As noted, a duty to disclose under Texas law exists where: (1) there is a confidential or fiduciary relationship between the plaintiff and the defendant; (2) the defendant discovered new information that made its earlier representation untrue or misleading; (3) the defendant made a partial disclosure that created a false impression; or (4) the defendant voluntarily disclosed some information, creating a duty to disclose the whole truth. *See Bombardier*, 572 S.W.3d at 220 (citation omitted). For the reasons discussed in the preceding section of this order, Plaintiffs have failed to allege facts that raise the inference that Intel had a duty to disclose that the affected CPUs were vulnerable to speculative-execution attacks associated with their AVX instructions under any of the four circumstances just described. Thus, their omission-based claim under the TDTPA is subject to dismissal on that ground.

Intel also argues that Plaintiffs' omission-based claim under the TDTPA is not cognizable because the reports that allegedly alerted Intel about the vulnerability at issue were publicly available as of the summer of 2018, which is before the named Plaintiff who purchased an affected CPU in Texas, Plaintiff Kahr, purchased the CPU in 2020.

The Court agrees. Intel cites a case that holds that an omission-based claim under the TDPA premised on the defendant's failure to disclose a defect is not actionable where the information that gave the defendant notice of the defect was "known in the industry" or otherwise was publicly available. *See In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:18-MD-2828-SI, 2021 WL 1198299, at *1 n.2, 6–7, 14 (D. Or. Mar. 29, 2021), *aff'd*, No. 22-35652, 2023 WL 7211394 (9th Cir. Nov. 2, 2023) ("*In re Intel*") (dismissing omission-based claim under the TDTPA and other state consumer-protection statutes for failure to allege an actionable omission because the plaintiffs alleged that the articles, white papers, and patent filings that gave notice to the defendant of the allegedly undisclosed defect were publicly available). The Court finds that *In re Intel* is both persuasive and directly on point. Here, as in that case, Plaintiffs allege that the same reports that gave Intel notice of the affected CPUs' vulnerability to speculative-execution attacks involving AVX instructions were publicly available prior to Plaintiff

Kahr's purchase of an affected CPU. *See* SAC ¶¶ 167–69, 176–79, 182. Plaintiffs do not distinguish *In re Intel* or show why it was wrongly decided. Accordingly, under the reasoning of *In re Intel*, which the Court adopts here, Plaintiffs have failed to plead an actionable omission under the TDTPA.

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under the TDTPA.

**e. ICFA**

Intel argues that Plaintiffs' omission-based claim under the ICFA is subject to dismissal for failure to plausibly allege that the injuries of the named Plaintiff who purchased an affected CPU in Illinois, Plaintiff Brian Cameron, were proximately caused by a communication by Intel that omitted information about the affected CPUs' vulnerability to speculative-execution attacks involving AVX instructions.

A claim under the ICFA can be based on "[a]n omission or concealment of a material fact in the conduct of trade or commerce[.]" *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504 (1996) (citations omitted). "Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, No. 13-CV-03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) (citation omitted). A "plaintiff must actually be deceived by a statement or omission that is made by the defendant" to maintain an action under the ICFA. *See De Bouse*, 235 Ill. 2d at 554–55. Accordingly, a plaintiff asserting a claim under the ICFA based on an omission must show that he or she received a communication from the defendant, directly or indirectly, that conveyed a material omission, and that he or she relied on it. *See id.* (holding that "[a] consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant"). "If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *See id.* at 554.

Plaintiffs argue that Intel made statements that satisfy these requirements because Intel "spoke on the subject of its CPUs' hardware redesign, including with respect to AVX instructions, without disclosing what it knew about those CPUs." *See* Opp. at 22. The statements to which

United States District Court
Northern District of California

Plaintiffs point are the March 2018 editorial, which promised hardware redesigns for certain CPU models to protect against specific variants of Spectre and Meltdown, *see* SAC ¶¶ 356-67, and a report by *Hackaday* dated December 12, 2018, which allegedly stated that Intel had announced new processors based on a redesigned architecture that had been "patched" to protect against Spectre and Meltdown, *see id.* ¶ 164. However, Plaintiffs do not allege that Plaintiff Cameron saw these statements or was otherwise directly exposed to them. Nor do they allege that he was exposed to them indirectly because the information in the statements was incorporated into other communications that he was exposed to and relied upon.[8] Because Plaintiff Cameron was not exposed to the statements in question directly or indirectly, the Court cannot infer that those statements proximately caused his injuries. Plaintiffs' omission-based claim under the ICFA is thus subject to dismissal on that ground.[9] *See De Bouse*, 235 Ill. at 554; *see also In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *9 (N.D. Cal. Mar. 28, 2024), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (dismissing omission-based claim under the ICFA because "plaintiffs fail to point to any statement regarding safety that conveys a material omission upon which they relied" and "[t]hus, they have no viable omission-based ICFA claim").

Intel also argues that Plaintiffs' omission-based claim under the ICFA must be dismissed for the additional reason that the reports that allegedly alerted Intel about the vulnerability at issue were publicly available in the summer of 2018, which is before Plaintiff Cameron purchased an affected CPU in Illinois in 2020.

The Court agrees. Because Plaintiffs allege that the same reports that gave Intel notice that the affected CPUs' vulnerability to speculative-execution attacks associated with their AVX instructions were publicly available in the summer of 2018, *see* SAC ¶¶ 167–69, 176–79, 182,

---

[8] Plaintiffs allege that Plaintiff Cameron reviewed and relied upon "marketing, online review, and technology/product comparison sites" before he purchased an affected CPU in 2020, *see* SAC ¶¶ 23–26, but these bare allegations, which do not satisfy the particularity requirements of Rule 9(b), do not raise the inference that the materials he reviewed incorporated information about hardware redesigns that was included in the March 2018 editorial or the December 12, 2018 *Hackaday* report.

[9] Plaintiffs' ICFA claim fails for the additional reason that neither the March 2018 editorial nor the *Hackaday* report addressed a hardware redesign for AVX-instruction-related vulnerabilities that became known to Intel during the summer of 2018.

which is well before Plaintiff Cameron purchased an affected CPU in Illinois in February 2020, *see id.* ¶ 23, their omission-based claim under the ICFA fails under the reasoning of *In re Intel*, which the Court adopts here. *See In re Intel*, 2021 WL 1198299, at *1 n.2, 6–7, 14 (dismissing omission-based claim under the ICFA and other state consumer-protection statutes for failure to allege an actionable omission because the plaintiffs alleged that the articles, white papers, and patent filings that gave notice to the defendant of the allegedly undisclosed defect were publicly available).

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under the ICFA.

**f. FDUTPA**

Intel argues that Plaintiffs' omission-based claim under the FDUTPA is subject to dismissal because they have not alleged facts indicating that it had a duty to disclose the defect.

The Court agrees. The Eleventh Circuit has held that "whether or not a duty to disclose is an element of a FDUTPA claim," an omission-based claim under the FDUTPA that is predicated on allegations that the defendant breached "an affirmative duty of disclosure" is subject to dismissal for failure to state a claim if the defendant did not have such a duty.[10] *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012); *see also In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMJEMX, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) ("Where an FDUTPA claim is based on an omission, and the defendant had no duty to disclose the purportedly withheld information, the claim fails as a matter of law.") (citing *Virgilio*, 680 F.3d at 1338). Here, Plaintiffs' omission-based claim under the FDUTPA is based on allegations that Intel "had a duty to disclose" the alleged defect. *See, e.g.*, SAC ¶ 597. Accordingly, that claim is subject to dismissal if the allegations in the SAC do not give rise to the

[10] Plaintiffs concede that the Eleventh Circuit held in *Virgilio* "that the plaintiff would need to establish a duty [to disclose] where the plaintiff explicitly based its FDUTPA claim on the defendant's breach of 'an affirmative duty of disclosure,'" but they argue that this holding applies only where "there was no indication that the defendant directly participated in the FDUPTA violation." *See* Opp. at 16. But nothing in *Virgilio* describes any such limitation in the FDUPTA based on the defendant's involvement (or lack of involvement).

inference that Intel had a duty to disclose that the affected CPUs were purportedly defectively designed because they were vulnerable to speculative-execution-related attacks associated with their AVX instructions.

"[T]here are [three] circumstances in which a duty to disclose [under Florida law] may arise: (1) one who speaks must say enough to prevent his words from misleading the other party; (2) one who has knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party; and (3) one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts." *See In re NJOY*, 2015 WL 12732461, at *14 (quoting *Hooper v. Barnett Bank of W. Florida*, 474 So.2d 1253, 1257 (Fla. App. 1985), *aff'd*, 498 So.2d 923 (Fla. 1986)).

Plaintiffs argue that Intel had a duty to disclose the information in question based on the first and second circumstances enumerated above because it spoke half-truths on the subject of the defect and because it had exclusive knowledge of the defect. *See* Opp. at 74. These arguments are unavailing. First, the only half-truth by Intel that Plaintiffs point to in their opposition is the March 2018 editorial. However, as discussed above, the Court has found that the editorial was not a half-truth concerning the affected CPUs' vulnerability to speculative-execution attacks associated with AVX instructions because it did not contain representations about that vulnerability and only addressed specific variants of Spectre and Meltdown that were known as of the date of its publication. Second, the Court cannot reasonably infer that Intel had exclusive knowledge about the affected CPUs' vulnerability to speculative-execution-related attacks associated with AVX instructions because the same information that alerted Intel about that vulnerability was made publicly available in the summer of 2018. Because the Court cannot reasonably infer that Intel had a duty to disclose the information in question, Plaintiffs' omission-based claim under the FDUTPA is subject to dismissal on that ground.

Intel also argues that Plaintiffs' omission-based claim under the FDUTPA is subject to dismissal for the additional reason that the reports that allegedly alerted Intel about the defect were publicly available in mid-2018, which is before Plaintiffs Tammy Knoll-Anderson and Brian Ross Rick purchased affected CPUs in Florida in November 2022 and June 2021, respectively.

The Court agrees. Because Plaintiffs allege that the same information that gave Intel notice that the affected CPUs were vulnerable to speculative-execution attacks associated with AVX instructions was publicly available in the summer of 2018, *see* SAC ¶¶ 167–69, 176–79, 182, which is well before Plaintiffs Knoll-Anderson and Rick purchased affected CPUs in 2021 and 2022, *see id.* ¶¶ 35, 51, their omission-based claim under the FDUTPA fails under the reasoning of *In re Intel*, which the Court adopts here. *See In re Intel*, 2021 WL 1198299, at *1 n.2, 6–7, 14 (dismissing omission-based claim under the FDUTPA and other state consumer-protection statutes for failure to allege an actionable omission because the plaintiffs alleged that the articles, white papers, and patent filings that gave notice to the defendant of the allegedly undisclosed defect were publicly available); *accord Hauck*, 2019 WL 1493356, at *13 (dismissing omission-based claim under the FDUTPA and other consumer-protection statutes on the ground that the plaintiff "Caskey-Medina cannot plausibly allege that AMD is liable for failing to disclose to Caskey-Medina information that was already public").

Accordingly, the Court GRANTS Intel's motion to dismiss Plaintiffs' omission-based claim under the FDUTPA.

**3. Claims Based on Unfair Conduct**

In their opposition, Plaintiffs argue that they have stated a claim for "unfairness" under the FDUTPA, NCUDTPA, and WCPA based on Intel's unfair practices. *See* Opp. at 16–17, 18, 25.

Intel argues that no "unfairness" claims under the FDUTPA, NCUDTPA, and WCPA are at issue in this case because Plaintiffs failed to assert any such claims in the SAC. *See* Reply at 9, 12 15, Dkt. No. 75.

The Court agrees with Intel. Plaintiffs' claims under the FDUTPA, NCUDTPA, and WCPA are premised only on the allegedly "deceptive acts or practices" by Intel that are discussed in the previous sections of this order, not on any "unfair" conduct. *See* SAC ¶¶ 581–610 (FDUTPA); *id.* ¶¶ 910–38 (NCUDTPA); *id.* ¶¶ 1082–1114 (WCPA). Although Plaintiffs argue in their opposition that they have alleged unfair conduct by Intel in violation of the FDUTPA, NCUDTPA, and WCPA, *see* Opp. at 16–17, 18, 25, that is not reflected in the SAC. In the portions of the SAC that describe the basis for Plaintiffs' claims under the FDUTPA, NCUDTPA,

and WCPA, the word "unfair" is used only to describe the types of conduct that those statutes prohibit, and not to identify conduct by Intel that was allegedly "unfair" or to indicate that Plaintiffs intended to assert claims based on "unfair" conduct. *See, e.g.*, SAC ¶¶ 583, 1084. Because the allegations in the SAC, as opposed to Plaintiffs' arguments, determine which claims and theories are at issue in this case, the Court finds that the SAC asserts no claims under the FDUTPA, NCUDTPA, or WCPA that are premised on unfair conduct by Intel. *See Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 994 (N.D. Cal. 2015) ("Despite Plaintiffs' attorney argument to the contrary, in a motion to dismiss, the Court relies on the words in the Complaint. . . . Plaintiffs must abide by the consequences of [their] pleading decision and cannot, at [their] convenience, switch to a theory not plead in the Complaint.").

**4. Dismissal is With One Final Leave to Amend**

"The standard for granting leave to amend is generous." *Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1119 (9th Cir. 2026) (citation and internal quotation marks omitted). However, a district court has discretion to deny leave to amend where "'any further amendment to the complaint would likely prove futile.'" *See Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)). "A 'district court's discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint.'" *Id.* (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

The Court believes it would be fair to conclude at this point that granting Plaintiffs leave to amend "would likely prove futile." *See Election Integrity*, 113 F.4th at 1099. Plaintiffs' misrepresentation-based claims fail for multiple reasons, the most salient of which is that the alleged misrepresentation upon which they are premised was not false or misleading as a matter of law. Amendment of those claims thus appears futile given what they have already pled about the challenged statement. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) (affirming dismissal of claims without leave to amend because "Plaintiffs' legal theories fail" and "[f]urther amendment would simply be a futile exercise"). Most of Plaintiffs' omission-based claims fail as a matter of law because Plaintiffs allege that the reports that allegedly gave Intel

notice of the defect became publicly available before any bellwether named Plaintiff purchased an affected CPU. In other words, Plaintiffs effectively pled themselves out of court with respect to those claims. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–99 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts."). The remaining omission-based claims fail because Plaintiffs have failed to plausibly allege that Intel had a duty to disclose. It is not likely that Plaintiffs would be able to plausibly plead that Intel had such a duty in an amended complaint without contradicting the allegations in the SAC because: (1) the allegations in the SAC indicate that the named Plaintiffs did not have, and could not have had, any kind of relationship with Intel, much less a fiduciary or confidential relationship; (2) the allegations in the SAC show that Intel facilitated the disclosure of information about the defect, rather than concealed it; (3) the allegations in the SAC show that Plaintiffs could have discovered the relevant information about the defect had they exercised reasonable diligence; and (4) the purported half-truths that Intel allegedly disseminated did not concern the defect because they did not contain any representations or disclosures about AVX-instruction-related speculative-execution vulnerabilities that became known to Intel in the summer of 2018.

Moreover, the Court has previously permitted Plaintiffs to amend the complaint twice, with the SAC being the third iteration of the complaint. The core factual allegations that give rise to Plaintiffs' claims did not change materially between the amended complaint and the SAC, suggesting that the SAC already contains all factual allegations that support Plaintiffs' theories of misrepresentation and omission.[11] *See* Dkt. No. 67–1 (redline comparing amended complaint with the SAC). This, and the fact that Plaintiffs do not identify in their opposition any new factual allegations they would add to an amended complaint if they were granted leave to do so, further suggests that granting them leave to amend is likely a pointless exercise. *See* Opp. at 25; *see also Election Integrity*, 113 F.4th at 1100 (affirming dismissal of claims without leave to amend on

[11] The SAC included multiple new claims based on the consumer-protection statutes of various states, but the core allegations that underlie Plaintiffs' theories of misrepresentation and omission in the SAC are materially identical to those in the amended complaint. *See* Dkt. No. 67–1 at 1–80.

futility grounds because the plaintiff had filed three complaints which contained "nearly identical operative allegations" to those in the complaint at issue, and the plaintiff did not articulate any factual allegations or legal theory it would advance in any amended complaint or "explain[] why any such allegations or theories would have been previously unavailable to it").

All that said, this is nominally the first time the Court has ruled with regard to the substance of the specific state law claims dismissed by this order. Even though the Court finds it likely that Plaintiffs cannot cure the defects identified above, it will grant one final opportunity to amend. The Court strongly urges Plaintiffs to consider whether they actually believe they can address the identified defects given the Court's comprehensive rejection of the underlying theory they have consistently advanced in this case. If they cannot do so, they should simply stand on their current allegations, decline to amend, agree to the entry of judgment, and exercise their right to appeal the Court's rulings. This is especially true because the parties stipulated that Intel's motion to dismiss the bellwether claims would test the sufficiency of the SAC as a whole, *see* Dkt. No. 66, which suggests that if Plaintiffs decline to amend, entry of judgment would be appropriate, enabling an immediate appeal.

//

//

//

//

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

## IV. CONCLUSION

The Court GRANTS Intel's motion to dismiss the bellwether claims WITH LEAVE TO AMEND. If Plaintiffs choose to amend, the amended complaint must be filed within 14 days and may not add any new defendants or claims.

The Court SETS a case management conference on September 1, 2026, at 2:00 p.m. The conference will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

**IT IS SO ORDERED.**

Dated: August 27, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge